UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

MARVIN SMITH SHAHEEN,

Plaintiff,

v.

9:05-CV-0173
(TJM/GHL)

P. McINTYRE, Correction Officer; J. FRAZIER, Correction Officer; and J. HOESSLE; Correction Officer,

Defendants.

---

APPEARANCES: OF COUNSEL:

MARVIN SMITH SHAHEEN
Plaintiff, *Pro Se*
120 East 102 Street
New York, NY 10029

HON. ANDREW M. CUOMO
Attorney General for the State of New York
Counsel for Defendants
The Capitol
Albany, NY 12224

STEVEN H. SCHWARTZ, ESQ.
Assistant Attorney General

GEORGE H. LOWE, United States Magistrate Judge

**REPORT-RECOMMENDATION**

This action has been referred to me for Report and Recommendation by the Honorable Thomas J. McAvoy, Senior United States District Judge, pursuant to Title 28, United States Code, Section 28 U.S.C. § 636(b) and Local Rule 72.3(c) of the Local Rules of Practice for this Court. Plaintiff Marvin Smith Shaheen ("Plaintiff") commenced this *pro se* prisoner civil rights action pursuant to 42 U.S.C. § 1983. Generally, Plaintiff alleges that three employees of the New York State Department of Correctional Services ("DOCS")–Coxsackie Correctional Facility

Corrections Officers P. McIntyre, J. Frazier, and J. Hoessle ("Defendants")–violated his rights under the First and Fourteenth Amendments when, between September 28, 2004 and October 2, 2004, they filed false misbehavior reports against him in retaliation for his having exercised his right to make complaints and file state and federal civil rights actions against state prison officials. (*See generally* Dkt. No. 1, Part 1, ¶¶ 6-7 & Attachments [Plf.'s Compl.].) Currently pending before the Court is Defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Dkt. No. 28.) For the reasons that follow, I recommend that Defendants' motion be granted.

# I. BACKGROUND

## A. Allegations of Plaintiff's Complaint

Liberally construed, Plaintiff's Complaint alleges the following facts.

1. Before September 28, 2004, Plaintiff filed various complaints against prison officials in state and federal courts, including (1) *Smith v. New York*, Claim No. 103499 (N.Y. Ct. Cl.) on September 29, 2000, (2) *Shaheen v. New York*, Claim No. 10628 (N.Y. Ct. Cl.) on December 3, 2001, (3) *Shaheen v. Hollins*, 03-CV-0017 (N.D.N.Y.) in January of 2003, (4) *Smith v. New York*, Claim No. 103499 (N.Y. Ct. Cl.) on October 10, 2003, (5) *Shaheen v. Notabartolo*, 03-CV-1366 (N.D.N.Y.) on November 12, 2003, (6) *Smith v. New York*, Claim No. 109017 (N.Y. Ct. Cl.) on February 13, 2004, (7) *Shaheen v. Herbert*, 04-CV-0648 (W.D.N.Y.) on March 4, 2004, and (8) *Shaheen v. Filion*, 04-CV-0625 (N.D.N.Y.) on March 7, 2004.[1]

2. On September 28, 2004, while Plaintiff was an inmate at Coxsackie Correctional Facility ("Coxsackie C.F."), Defendant McIntyre issued a misbehavior report falsely charging

[1] (Dkt. No. 1, Part 1, ¶ 5.b. & Attachment Thereto [Plf.'s Compl.].)

Plaintiff with refusing to obey a direct order, being out of place, and violating other (unspecified) facility regulations, in retaliation against Plaintiff for having exercised his right, under the First Amendment, to file various of the aforementioned federal and state court actions.[2] As a result of the false misbehavior report, Plaintiff was later (at an unspecified time) subjected to keeplock confinement for fifteen (15) days with an accompanying loss of telephone, commissary, packages and recreation privileges.[3]

3. On October 2, 2004, Defendant McIntyre issued a *second* misbehavior report falsely charging Plaintiff with refusing to obey a direct order and creating a disturbance, in retaliation against Plaintiff for having exercised his First Amendment right to file various of the aforementioned federal and state court actions.[4] As a result of the false misbehavior report, Plaintiff was later (at an unspecified time) subjected to keeplock confinement for fifteen (15) days with an accompanying loss of telephone, commissary, and packages privileges.[5]

4. Also on October 2, 2004, Defendant McIntyre, in a conspiratorial manner, told Defendant Hoessle, in the Coxsackie C.F. mess hall, that he wanted Plaintiff "packed-up [sic] for beating his previous misbehavior report."[6] That same day, after Plaintiff returned from the mess hall, Defendant Hoessle related Defendant McIntyre's instruction to an unknown corrections

---

[2] (*Id*. at ¶¶ 6, 6.A.)

[3] (*Id*. at ¶ 6.A.)

[4] (*Id*. at ¶ 6.B.)

[5] (*Id*. at ¶ 6.B.)

[6] (*Id*. at ¶ 6.C.)

officer assigned to A Block of Coxsackie C.F.[7] As a result of Defendant McIntyre's instruction, Defendant Hoessle issued a misbehavior report falsely charging Plaintiff with smoking a cigarette in his cell.[8] As a result of the false misbehavior report, Plaintiff was later (at an unspecified time) subjected (by Hearing Officer Lt. McDermot) to keeplock confinement for thirty (30) days.[9]

5. Yet again on October 2, 2004, Defendants Frazier and McIntyre conspired (in an unspecified manner) to subject Plaintiff to unjustified disciplinary penalties in retaliation for having exercised his First Amendment right to file various of the aforementioned federal and state court actions.[10]

6. Finally, at approximately 3:30 p.m. on October 2, 2004, after Plaintiff had returned to his cell in A Block of Coxsackie C.F., Defendant McIntyre told Defendant Frazier to "fuck [Plaintiff]."[11] As a result, after Defendant Frazier had released the inmates on the cell block for dinner, Defendant Frazier refused Plaintiff his dinner, a shower, recreation and any telephone calls.[12] Defendant Frazier then issued a misbehavior report falsely charging Plaintiff with smoking a cigarette in his cell, refusing to obey a direct order, harassment, and obstructing the visibility into his cell, in retaliation for having exercised his First Amendment right to file

---

7 (*Id.*)

8 (*Id.*)

9 (*Id.*)

10 (*Id.* at ¶ 6.D. & Attached Grievance dated 10/2/04.)

11 (*Id.* at ¶ 6.E.)

12 (*Id.*)

various of the aforementioned federal and state court actions.[13] As a result, Plaintiff was later (at an unspecified time) subjected to keeplock confinement for thirty (30) days.[14]

**B. Parties' Arguments on Defendants' Motion for Summary Judgment**

In their motion for summary judgment, Defendants argue that Plaintiff's Complaint should be dismissed on three grounds: (1) Plaintiff failed to exhaust his administrative remedies before filing this action; (2) Plaintiff's conclusory allegations of retaliation fail to state a claim upon which relief might be granted; and (3) Plaintiff has failed to provide the Court or opposing counsel with his present address. (Dkt. No. 28, Part 7, at 2-8 [Defs.' Mem. of Law].)

In response to Defendants' exhaustion argument, Plaintiff argues that (1) he was frustrated from pursuing his administrative remedies in that, after he submitted by mail a grievance (a copy of which is attached to his Complaint) to the "F-Block tier officer," that grievance was "never processed" by "the guard staff or grievance officials" at Coxsackie C.F., (2) "it is impossible for Plaintiff to file or make an appeal [with respect] to something that was never processed," (3) in any event, Plaintiff wrote timely "follow-up" letters to grievance officials, who simply failed to respond to those "follow-up" letters. (Dkt. No. 34, at 9-12 [Plf.'s Mem. of Law, pages "2" through "5"].)

In response to Defendants' argument that Plaintiff's conclusory allegations of retaliation fail to state a claim, Plaintiff argues that (1) he has, in fact, alleged sufficiently specific facts plausibly suggesting the times, dates, and persons involved in the alleged constitutional violations in order to state an actionable claim, and (2) moreover, the documentary evidence

---

13 (*Id.*)

14 (*Id.*)

contained in the summary judgment record before the Court shows that Defendants conspired thirteen (13) times to retaliate against Plaintiff for having exercised his First Amendment right to file various of the aforementioned federal and state court actions. (Dkt. No. 34, at 6, 12 [Plf.'s Mem. of Law, pages "5" and "6"].)

Finally, in response to Defendants' argument that Plaintiff has failed to provide the Court or opposing counsel with his present address, Plaintiff argues that (1) the only mistake that Plaintiff has made, since the filing of District Judge McAvoy's Order of September 6, 2006 (denying Defendants' motion to dismiss for failure to prosecute), is the listing of his address as being Post Office Box "215" in Portchester, NY, rather than Post Office Box "1215" in Portchester, NY, and (2) in any event, Plaintiff rectified the error, and no prejudice has resulted to Defendants. (Dkt. No. 34, at 6, 7 [Plf.'s Mem. of Law, pages "6" and "7"].)

In reply, Defendants assert several arguments with regard to Plaintiff's failure to exhaust his available administrative remedies, including an argument that Plaintiff's original grievance was too vague and conclusory to place its reader on notice of any constitutional violations whatsoever, and an argument that Plaintiff's two "follow-up" letters (while more detailed) were not submitted to grievance officials and were thus not treated as grievances (although they were duly investigated). (Dkt. No. 35, Part 1, ¶¶ 3-14 [Schwartz Affirm.)

## II. APPLICABLE LEGAL STANDARDS

### A. Motion for Summary Judgment Under Rule 56

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is warranted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether a genuine issue of material[15] fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party.[16]

However, when the moving party has met its initial burden of establishing the absence of any genuine issue of material fact, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial."[17] The nonmoving party must do more than "rest upon the mere allegations . . . of the [plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts."[18] Rather, "[a] dispute regarding a material fact is *genuine* if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[19]

What this somewhat complex burden-shifting standard means is that, where a plaintiff

---

[15] A fact is "material" only if it would have some effect on the outcome of the suit. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

[16] *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) [citation omitted]; *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990) [citation omitted].

[17] Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is made [by a defendant] and supported as provided in this rule, the [plaintiff] may not rest upon the mere allegations . . . of the [plaintiff's] pleading, but the [plaintiff's] response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the [plaintiff] does not so respond, summary judgment, if appropriate, shall be entered against the [plaintiff]."); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986).

[18] Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is made [by a defendant] and supported as provided in this rule, the [plaintiff] may not rest upon the mere allegations . . . of the [plaintiff's] pleading . . . ."); *Matsushita*, 475 U.S. at 585-86; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

[19] *Ross v. McGinnis*, 00-CV-0275, 2004 WL 1125177, at *8 (W.D.N.Y. March 29, 2004) [internal quotations omitted] [emphasis added].

has failed to respond to a defendant's statements of material fact contained in its Statement of Material Facts (a/k/a its "Rule 7.1 Statement"), the facts as set forth in that Statement will be accepted as true[20] to the extent that (1) those facts are supported by the evidence in the record,[21] and (2) the non-moving party, if he is proceeding *pro se*, has been specifically advised of the potential consequences of failing to respond to the movant's motion for summary judgment.[22]

---

[20] *See* N.D.N.Y. L.R. 7.1(a)(3) ("Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party.").

[21] *See Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 243 (2d Cir. 2004) ("[W]here the non-movant party chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial. . . . If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied even if no opposing evidentiary matter is presented. . . . [I]n determining whether the moving party has met this burden of showing the absence of a genuine issue for trial, the district court may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 Statement. It must be satisfied that the citation to evidence in the record supports the assertion.") [internal quotation marks and citations omitted]; *Govan v. Campbell*, 289 F. Supp.2d 289, 295 (N.D.N.Y. 2003) (Sharpe, M.J.) ("In this case, [the plaintiff] did not file a statement of undisputed facts in compliance with Local Rule 7.1(a)(3). Consequently, the court will accept the *properly supported* facts contained in the defendants' 7.1 statement.") [emphasis added]; *Adirondack Cycle & Marine, Inc. v. Am. Honda Motor Co., Inc.*, 00-CV-1619, 2002 U.S. Dist. LEXIS 4386, at *2-3 (N.D.N.Y. Mar. 18, 2002) (McAvoy, J.) ("Local Rule 7.1 requires a party opposing summary judgment to respond to the statement of undisputed material facts submitted by the movant. To the extent such facts are not controverted, *the properly supported facts* will be taken as true.") [emphasis added; citation omitted]; *cf.* Fed. R. Civ. P. 83(a)(1) ("A local rule shall be consistent with . . . Acts of Congress and rules adopted under 28 U.S.C. §§ 2072 and 2075 [which include the Federal Rules of Civil Procedure] . . . ."); Fed. R. Civ. P. 56(e) (requiring that, "if the non-movant does not . . . respond [to a summary judgment motion], summary judgment, *if appropriate*, shall be entered against the non-movant," and requiring that, as a threshold matter, the motion for summary judgment must be "made *and supported* as provided in this rule") [emphasis added].

[22] *See Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996); *cf.* N.D.N.Y. L.R. 56.2 (imposing on movant duty to provide such notice to *pro se* opponent).

(Here, I note that Plaintiffs were so advised by Defendants.)[23]

Implied in the above-stated standard is the fact that, where a non-movant fails to respond to a movant's Rule 7.1 Statement, a district court has no duty to perform an independent review of the record to find proof of a factual dispute, even if that non-movant is proceeding *pro se*.[24] In the event the district court chooses to conduct such an independent review of the record, any verified complaint filed by the plaintiff should be treated as an affidavit.[25] (Here, I note that Plaintiffs' Complaint contains a verification pursuant to 28 U.S.C. § 1746.[26]) In any event, to be sufficient to create a factual issue for purposes of a summary judgment motion, an affidavit must,

---

23 (Dkt. No. 46, Part 1.) Furthermore, clearly Plaintiff understood these consequences since he subsequently requested (and was granted) an extension of time in which to respond to Defendants' motion. (Dkt. No. 47.)

24 *See Amnesty Am. v. Town of W. Hartford*, 288 F.3d 467, 470 (2d Cir. 2002) ("We agree with those circuits that have held that Fed. R. Civ. P. 56 does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute.") [citations omitted]; *accord*, *Lee v. Alfonso*, No. 04-1921, 2004 U.S. App. LEXIS 21432 (2d Cir. Oct. 14, 2004), *aff'g*, 97-CV-1741, 2004 U.S. Dist. LEXIS 20746, at *12-13 (N.D.N.Y. Feb. 10, 2004) (Scullin, J.) (granting motion for summary judgment); *Fox v. Amtrak*, 04-CV-1144, 2006 U.S. Dist. LEXIS 9147, at *1-4 (N.D.N.Y. Feb. 16, 2006) (McAvoy, J.) (granting motion for summary judgment); *Govan v. Campbell*, 289 F. Supp.2d 289, 295 (N.D.N.Y. Oct. 29, 2003) (Sharpe, M.J.) (granting motion for summary judgment); *Prestopnik v. Whelan*, 253 F. Supp.2d 369, 371-372 (N.D.N.Y. 2003) (Hurd, J.).

25 *See Patterson v. County of Oneida*, 375 F.3d 206, 219 (2d. Cir. 2004) ("[A] verified pleading . . . has the effect of an affidavit and may be relied upon to oppose summary judgment."); *Fitzgerald v. Henderson*, 251 F.3d 345, 361 (2d Cir. 2001) (holding that plaintiff "was entitled to rely on [his verified amended complaint] in opposing summary judgment"), *cert. denied*, 536 U.S. 922 (2002); *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1993) ("A verified complaint is to be treated as an affidavit for summary judgment purposes.") [citations omitted].

26 (Dkt. No. 1.)

among other things, not be conclusory.[27] An affidavit is conclusory if, for example, its assertions lack any supporting evidence or are too general.[28] Finally, even where an affidavit (or verified complaint) is nonconclusory, it may be insufficient to create a factual issue where it is (1) "largely unsubstantiated by any other direct evidence" and (2) "so replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in the complaint."[29]

---

[27] *See* Fed. R. Civ. P. 56(e) (requiring that non-movant "set forth specific facts showing that there is a genuine issue for trial"); *Patterson*, 375 F.3d at 219 (2d. Cir. 2004) ("Nor is a genuine issue created merely by the presentation of assertions [in an affidavit] that are conclusory.") [citations omitted]; *Applegate v. Top Assoc.*, 425 F.2d 92, 97 (2d Cir. 1970) (stating that the purpose of Rule 56[e] is to "prevent the exchange of affidavits on a motion for summary judgment from degenerating into mere elaboration of conclusory pleadings").

[28] *See*, *e.g.*, *Bickerstaff v. Vassar Oil*, 196 F.3d 435, 452 (2d Cir. 1998) (McAvoy, C.J., sitting by designation) ("Statements [for example, those made in affidavits, deposition testimony or trial testimony] that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment.") [citations omitted]; *West-Fair Elec. Contractors v. Aetna Cas. & Sur.*, 78 F.3d 61, 63 (2d Cir. 1996) (rejecting affidavit's conclusory statements that, in essence, asserted merely that there was a dispute between the parties over the amount owed to the plaintiff under a contract); *Meiri v. Dacon*, 759 F.2d 989, 997 (2d Cir. 1985) (plaintiff's allegation that she "heard disparaging remarks about Jews, but, of course, don't ask me to pinpoint people, times or places. . . . It's all around us" was conclusory and thus insufficient to satisfy the requirements of Rule 56[e]), *cert. denied*, 474 U.S. 829 (1985); *Applegate*, 425 F.2d at 97 ("[Plaintiff] has provided the court [through his affidavit] with the characters and plot line for a novel of intrigue rather than the concrete particulars which would entitle him to a trial.").

[29] *See*, *e.g.*, *Jeffreys v. City of New York*, 426 F.3d 549, 554-55 (2d Cir. 2005) (affirming grant of summary judgment to defendants in part because plaintiff's testimony about an alleged assault by police officers was "largely unsubstantiated by any other direct evidence" and was "so replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in the complaint") [citations and internal quotations omitted]; *Argus, Inc. v. Eastman Kodak Co.*, 801 F.2d 38, 45 (2d Cir. 1986) (affirming grant of summary judgment to defendants in part because plaintiffs' deposition testimony regarding an alleged defect in a camera product line was, although specific, "unsupported by documentary or other concrete evidence" and thus "simply not enough to create a genuine issue of fact in light of the evidence to the contrary"); *Allah v. Greiner*, 03-CV-3789,

**B. Motion to Dismiss for Failure to State a Claim Under Rule 12(b)(6)**

To the extent that a defendant's motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure is based entirely on the plaintiff's complaint,[30] such a motion is functionally the same as a motion to dismiss for failure to state a claim under Rule 12(b)(6). As a result, "[w]here appropriate, a trial judge may dismiss for failure to state a cause of action upon motion for summary judgment." *Schwartz v. Compagnise General Transatlantique*, 405 F.2d 270, 273-74 (2d Cir. 1968) [citations omitted], *accord*, *Katz v. Molic*, 128 F.R.D. 35, 37-38 (S.D.N.Y. 1989) ("This Court finds that . . . a conversion [of a Rule 56 summary judgment motion to a Rule 12(b)(6) motion to dismiss the complaint] is proper with or without notice to the parties.").

Moreover, even where a defendant has not advanced such a failure-to-state-a-claim argument on a motion for summary judgment, a district court may, *sua sponte*, address whether a

---

2006 WL 357824, at *3-4 & n.7, 14, 16, 21 (S.D.N.Y. Feb. 15, 2006) (prisoner's verified complaint, which recounted specific statements by defendants that they were violating his rights, was conclusory and discredited by the evidence, and therefore insufficient to create issue of fact with regard to all but one of prisoner's claims, although verified complaint was sufficient to create issue of fact with regard to prisoner's claim of retaliation against one defendant because retaliatory act occurred on same day as plaintiff's grievance against that defendant, whose testimony was internally inconsistent and in conflict with other evidence); *Olle v. Columbia Univ.*, 332 F. Supp.2d 599, 612 (S.D.N.Y. 2004) (plaintiff's deposition testimony was insufficient evidence to oppose defendants' motion for summary judgment where that testimony recounted specific allegedly sexist remarks that "were either unsupported by admissible evidence or benign"), *aff'd*, 136 F. App'x 383 (2d Cir. 2005) (unreported decision, cited not as precedential authority but merely to show the case's subsequent history, in accordance with Second Circuit Local Rule § 0.23).

[30] (*See*, *e.g.*, Dkt. No. 28, Part 7, at 7-8 [Defs.' Mem. of Law, arguing, *inter alia*, that Plaintiff's conclusory allegations of retaliation, in his Complaint, fail to state a claim upon which relief may be granted].)

*pro se* prisoner has failed to state a claim upon which relief may be granted.[31]

For these reasons, it is appropriate to briefly summarize the recently revised legal standard governing Rule 12(b)(6) motions to dismiss. Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). It has long been understood that a defendant may base such a motion on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Rule 8(a)(2);[32] or (2) a challenge to the legal cognizability of the claim.[33]

---

[31] The authority to conduct this *sua sponte* analysis is derived from two sources: (1) 28 U.S.C. § 1915(e)(2)(B)(ii), which provides that "the court shall dismiss [a] case [brought by a prisoner proceeding *in forma pauperis*] at any time if the court determines that . . . the action . . . is frivolous or malicious[,] . . . fails to state a claim on which relief may be granted[,] . . . or . . . seeks monetary relief against a defendant who is immune from such relief"; and (2) 28 U.S.C. § 1915A(b), which provides that, "[o]n review, the court shall . . . dismiss the [prisoner's] complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted . . . ."

[32] *See* 5C Wright & Miller, *Federal Practice and Procedure* § 1363 at 112 (3d ed. 2004) ("A motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) goes to the sufficiency of the pleading under Rule 8(a)(2).") [citations omitted]; *Princeton Indus., Inc. v. Rem*, 39 B.R. 140, 143 (Bankr. S.D.N.Y. 1984) ("The motion under F.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint as to whether the plaintiff has conformed to F.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement' that the pleader is entitled to relief."); *Bush v. Masiello*, 55 F.R.D. 72, 74 (S.D.N.Y. 1972) ("This motion under Fed. R. Civ. P. 12(b)(6) tests the formal legal sufficiency of the complaint, determining whether the complaint has conformed to Fed. R. Civ. P. 8(a)(2) which calls for a 'short and plain statement that the pleader is entitled to relief.'").

[33] *See* *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) ("These allegations give respondent fair notice of what petitioner's claims are and the grounds upon which they rest. . . . In addition, they state claims upon which relief could be granted under Title VII and the ADEA."); *Wynder v. McMahon*, 360 F.3d 73, 80 (2d Cir. 2004) ("There is a critical distinction between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6), that a plaintiff state a claim upon which relief can be granted."); *Phelps v. Kapnolas*, 308 F.3d 180, 187 (2d Cir. 2002) ("Of course, none of this is to say that a court should hesitate to dismiss a

Rule 8(a)(2) requires that a pleading include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Such a statement must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."[34] The purpose of this rule is to "facilitate a proper decision on the merits."[35] A complaint that fails to comply with this rule "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [plaintiff's] claims."[36]

---

complaint when the plaintiff's allegation . . . fails as a matter of law.") [citation omitted]; *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000) (distinguishing between a failure to meet Rule 12[b][6]'s requirement of stating a cognizable claim and Rule 8[a]'s requirement of disclosing sufficient information to put defendant on fair notice); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 379 F. Supp.2d 348, 370 (S.D.N.Y. 2005) ("Although Rule 8 does not require plaintiffs to plead a theory of causation, it does not protect a legally insufficient claim [under Rule 12(b)(6)].") [citation omitted]; *Util. Metal Research & Generac Power Sys.*, 02-CV-6205, 2004 U.S. Dist. LEXIS 23314, at *4-5 (E.D.N.Y. Nov. 18, 2004) (distinguishing between the legal sufficiency of the cause of action under Rule 12[b][6] and the sufficiency of the complaint under Rule 8[a]); *accord*, *Straker v. Metro Trans. Auth.*, 331 F. Supp.2d 91, 101-02 (E.D.N.Y. 2004); *Tangorre v. Mako's, Inc.*, 01-CV-4430, 2002 U.S. Dist. LEXIS 1658, at *6-7 (S.D.N.Y. Jan. 30, 2002) (identifying two sorts of arguments made on a Rule 12[b][6] motion--one aimed at the sufficiency of the pleadings under Rule 8[a], and the other aimed at the legal sufficiency of the claims).

[34] *Dura Pharm., Inc. v. Broudo*, 125 S. Ct. 1627, 1634 (2005) (holding that the complaint failed to meet this test) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 [1957]); *see also Swierkiewicz*, 534 U.S. at 512 (quoting *Conley*, 355 U.S. at 47); *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993) (quoting *Conley*, 355 U.S. at 47).

[35] *See Swierkiewicz*, 534 U.S. at 514 (quoting *Conley*, 355 U.S. at 48).

[36] *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996) (McAvoy, J.), *aff'd*, 113 F.3d 1229 (2d Cir. 1997) (unpublished table opinion). Consistent with the Second Circuit's application of § 0.23 of the Rules of the U.S. Court of Appeals for the Second Circuit, I cite this unpublished table opinion, not as precedential authority, but merely to show the case's subsequent history. *See*, *e.g.*, *Photopaint Tech., LLC v. Smartlens Corp.*, 335 F.3d 152, 156 (2d Cir. 2003) (citing, for similar purpose, unpublished table opinion of *Gronager v. Gilmore Sec. &*

The Supreme Court has long characterized this pleading requirement under Rule 8(a)(2) as "simplified" and "liberal," and has repeatedly rejected judicially established pleading requirements that exceed this liberal requirement.[37] However, it is well established that even this liberal notice pleading standard "has its limits."[38] As a result, several Supreme Court and Second Circuit decisions exist, holding that a pleading has failed to meet this liberal notice pleading standard.[39]

Most notably, in the recent decision of *Bell Atl. Corp. v. Twombly*, the Supreme Court, in reversing an appellate decision holding that a complaint had stated a claim upon which relief could be granted, "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it

---

*Co.*, 104 F.3d 355 [2d Cir. 1996]).

[37] *See*, *e.g.*, *Swierkiewicz*, 534 U.S. at 513-514 (noting that "Rule 8(a)(2)'s simplified pleading standard applies to all civil actions, with limited exceptions [including] averments of fraud or mistake.").

[38] 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003).

[39] *See*, *e.g.*, *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-74 (2007) (pleading did not meet Rule 8[a][2]'s liberal requirement), *accord*, *Dura Pharm.*, 125 S. Ct. at 1634-35, *Christopher v. Harbury*, 536 U.S. 403, 416-22 (2002), *Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 234-35 (2d Cir. 2004), *Gmurzynska v. Hutton*, 355 F.3d 206, 208-09 (2d Cir. 2004). Several unpublished decisions exist from the Second Circuit affirming the Rule 8(a)(2) dismissal of a complaint after *Swierkiewicz*. *See*, *e.g.*, *Salvador v. Adirondack Park Agency of the State of N.Y.*, No. 01-7539, 2002 WL 741835, at *5 (2d Cir. Apr. 26, 2002) (affirming pre-*Swierkiewicz* decision from Northern District of New York interpreting Rule 8[a][2]). Although these decisions are not themselves precedential authority, *see* Rules of the U.S. Court of Appeals for the Second Circuit, § 0.23, they appear to acknowledge the continued precedential effect, after *Swierkiewicz*, of certain cases from within the Second Circuit interpreting Rule 8(a)(2). *See Khan v. Ashcroft*, 352 F.3d 521, 525 (2d Cir. 2003) (relying on summary affirmances because "they clearly acknowledge the continued precedential effect" of *Domond v. INS*, 244 F.3d 81 [2d Cir. 2001], after that case was "implicitly overruled by the Supreme Court" in *INS v. St. Cyr*, 533 U.S. 289 [2001]).

appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 127 S. Ct. 1955, 1968-69 (2007).[40] Rather than turning on the conceivability of an actionable claim, the Court clarified, the Rule 8 standard turns on the "plausibility" of an actionable claim. *Id*. at 1965-74. More specifically, the Court held that, for a plaintiff's complaint to state a claim, his "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]" assuming, of course, that all the allegations in the complaint are true. *Id*. at 1965 [citations omitted]. What this means, on a practical level, is that there must be "plausible grounds to infer [actionable conduct]," or, in other words, "enough fact to raise a reasonable expectation that discovery will reveal evidence of [actionable conduct]." *Id*.

Having said that, it should be emphasized that, "[i]n reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor."[41] Moreover, it should be noted that "[t]his standard is applied with even greater force where the plaintiff alleges civil rights violations or where the complaint is submitted *pro se*."[42] In other words, while all pleadings are

---

[40] The Court in *Twombly* further explained: "The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been adequately stated, it may be supported by showing any set of facts consistent with the allegations in the complaint. . . . *Conley*, then, described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival." *Twombly*, 127 S. Ct. at 1969.

[41] *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (affirming grant of motion to dismiss) [citation omitted]; *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994).

[42] *Hernandez*, 18 F.3d at 136 [citation omitted]; *see also Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003) [citations omitted]; *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 619 (2d Cir. 1999) [citation omitted].

to be construed liberally, *pro se* civil rights pleadings are generally to be construed with an *extra* degree of liberality. Indeed, generally "courts must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest."[43] In addition, when addressing a *pro se* complaint, generally a district court "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."[44]

However, when a plaintiff is proceeding *pro se*, "all normal rules of pleading are not absolutely suspended."[45] For example, an opportunity to amend should be denied where "the problem with [plaintiff's] causes of action is substantive" such that "[b]etter pleading will not cure it."[46] In addition, "[t]here are circumstances where an overly litigious inmate, who is quite

---

[43] *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (finding that plaintiff's conclusory allegations of a due process violation were insufficient) (internal quotation and citation omitted).

[44] *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation and citation omitted); *see also* Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given when justice so requires").

[45] *Stinson v. Sheriff's Dep't of Sullivan County*, 499 F. Supp. 259, 262 & n.9 (S.D.N.Y. 1980); *accord*, *Standley v. Dennison*, 05-CV-1033, 2007 WL 2406909, at *6, n.27 (N.D.N.Y. Aug. 21, 2007) (Sharpe, J., adopting report-recommendation of Lowe, M.J.); *Muniz*, 2007 WL 2027912, at *2 (McAvoy, J., adopting report-recommendation of Lowe, M.J.); *DiProjetto v. Morris Protective Serv.*, 489 F. Supp.2d 305, 307 (W.D.N.Y. 2007); *Cosby v. City of White Plains*, 04-CV-5829, 2007 WL 853203, at *3 (S.D.N.Y. Feb. 9, 2007); *Lopez v. Wright*, 05-CV-1568, 2007 WL 388919, at *3, n.11 (N.D.N.Y. Jan. 31, 2007) (Mordue, C.J., adopting report-recommendation of Lowe, M.J.); *Richards v. Goord*, 04-CV-1433, 2007 WL 201109, at *5 (N.D.N.Y. Jan. 23, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Ariola v. Onondaga County Sheriff's Dept.*, 04-CV-1262, 2007 WL 119453, at *2, n.13 (N.D.N.Y. Jan. 10, 2007) (Hurd, J., adopting report-recommendation of Lowe, M.J.); *Collins*, 2007 WL 37404, at *4 (Kahn, J., adopting report-recommendation of Lowe, M.J.).

[46] *Cuoco*, 222 F.3d at 112 (finding that repleading would be futile) [citation omitted]; *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of

familiar with the legal system and with pleading requirements, may not be afforded [the] special solicitude" or status that is normally afforded *pro se* litigants.[47]

### C. Revocation of Special Status of Overly Litigious *Pro Se* Civil Rights Litigants

Generally, the rationale for revoking the special status of overly litigious *pro se* civil rights litigants (at least in the Second Circuit) is not that the *pro se* litigant should be punished but that his excessive litigiousness demonstrates his *experience*, the lack of which is the reason for conferring the special status upon *pro se* litigants in the first place.[48] Moreover, permitting

---

course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (affirming, in part, dismissal of claim with prejudice) [citation omitted].

[47] *Smith v. Burge*, 03-CV-0955, 2006 WL 2805242, at *3 & n.3 (N.D.N.Y. Sept. 28, 2006) (Kahn, J., adopting report-recommendation of Lowe, M.J.) [citations omitted]; *see also Johnson v. Eggersdorf*, 8 F. App'x 140, 143 (2d Cir. 2001) (unpublished opinion), *aff'g*, 97-CV-0938, Decision and Order (N.D.N.Y. filed May 28, 1999) (Kahn, J.), *adopting*, Report-Recommendation, at 1, n.1 (N.D.N.Y. filed Apr. 28, 1999) (Smith, M.J.); *Johnson v. C. Gummerson*, 201 F.3d 431, at *2 (2d Cir. 1999) (unpublished opinion), *aff'g*, 97-CV-1727, Decision and Order (N.D.N.Y. filed June 11, 1999) (McAvoy, J.), *adopting*, Report-Recommendation (N.D.N.Y. filed April 28, 1999) (Smith, M.J.); *Davidson v. Flynn*, 32 F.3d 27, 31 (2d Cir. 1994).

[48] **Second Circuit Cases:** *See*, *e.g.*, *Johnson v. Eggersdorf*, 8 F. App'x 140, 143 (2d Cir. 2001) (unpublished opinion), *aff'g*, 97-CV-0938, Decision and Order (N.D.N.Y. filed May 28, 1999) (Kahn, J.), *adopting*, Report-Recommendation, at 1, n.1 (N.D.N.Y. filed Apr. 28, 1999) (Smith, M.J.); *Johnson v. C. Gummerson*, 201 F.3d 431, at *2 (2d Cir. 1999) (unpublished opinion), *aff'g*, 97-CV-1727, Decision and Order (N.D.N.Y. filed June 11, 1999) (McAvoy, J.), *adopting*, Report-Recommendation (N.D.N.Y. filed April 28, 1999) (Smith, M.J.); *Davidson v. Flynn*, 32 F.3d 27, 31 (2d Cir. 1994).

**N.D.N.Y. Cases:** *See*, *e.g.*, *Carlisle v. Goord*, 03-CV-0296, 2007 WL 2769566, at *9 (N.D.N.Y. Sept. 21, 2007) (Scullin, J., adopting Report-Recommendation of Lowe, M.J.); *Shomo v. N.Y. D.O.C.S.*, 04-CV-0910, 2007 WL 2580509, at *3-4 (N.D.N.Y. Sept. 4, 2007) (Kahn, J., adopting Report-Recommendation of Lowe, M.J.); *Standley v. Dennison*, 05-CV-1033, 2007 WL 2406909, at *7-8 (N.D.N.Y. Aug. 21, 2007) (Sharpe, J., adopting Report-Recommendation of Lowe, M.J.); *Tracy v. Freshwater*, 01-CV-0500, 2007 WL 2230068, at *2-4 (N.D.N.Y. July 31, 2007) (Munson, J., adopting Report-Recommendation of Lowe, M.J.); *Muniz v. Goord*, 04-CV-0479, 2007 WL 2027912, at *6 (N.D.N.Y. July 11, 2007) (McAvoy, J.,

experienced *pro se* litigants to retain their special status would tilt the scales of justice unfairly in favor of the *pro se* litigant and against his opponents.[49] As observed by Judge Irving R.

---

adopting Report-Recommendation of Lowe, M.J.); *Eady v. Lappin*, 05-CV-0824, 2007 WL 1531879, at *4-6 (N.D.N.Y. May 22, 2007) (Mordue, C.J., adopting Report-Recommendation of Lowe, M.J.); *Edwards v. Selsky*, 04-CV-1054, 2007 WL 748442, at *2-3 (N.D.N.Y. March 6, 2007) (Mordue, C.J., adopting Report-Recommendation of Lowe, M.J.); *Rolle v. Garcia*, 04-CV-0312, 2007 WL 672679, at *4 (N.D.N.Y. Feb. 28, 2007) (Kahn, J., adopting Report-Recommendation of Lowe, M.J.); *Mora v. Bockelmann*, 03-CV-1217, 2007 WL 603410, at *4 (N.D.N.Y. Feb. 22, 2007) (Mordue, C.J., adopting Report-Recommendation of Homer, M.J.); *Brown v. Goord*, 04-CV-0785, 2007 WL 607396, at *2-3 (N.D.N.Y. Feb. 20, 2007) (McAvoy, J., adopting Report-Recommendation of Lowe, M.J.); *Mitchell v. Harriman*, 04-CV-0937, 2007 WL 499619, at *3 (N.D.N.Y. Feb. 13, 2007) (Sharpe, J., adopting Report-Recommendation of Homer, M.J.); *Sledge v. Kooi*, 04-CV-1311, 2007 WL 951447, at *3-4 (N.D.N.Y. Feb. 12, 2007) (Lowe, M.J.), *adopted by* 2007 WL 969576 (N.D.N.Y. March 28, 2007) (McAvoy, J.); *Gill v. Pidylpchak*, 02-CV-1460, 2006 WL 3751340, at *2 (N.D.N.Y. Dec. 19, 2006) (Scullin, J., adopting Report-Recommendation of Treece, M.J.); *Saunders v. Ricks*, 03-CV-0598, 2006 WL 3051792, at *2 (N.D.N.Y. Oct. 18, 2006) (Hurd, J., adopting Report-Recommendation of Lowe, M.J.); *Gill v. Frawley*, 02-CV-1380, 2006 WL 1742738, at *3 (N.D.N.Y. June 22, 2006) (McAvoy, J., adopting Report-Recommendation of Lowe, M.J.); *Davidson v. Talbot*, 01-CV-0473, 2005 U.S. Dist. LEXIS 39576, at *20 (N.D.N.Y. March 31, 2005) (Treece, M.J.), *adopted by* 2006 U.S. Dist. LEXIS 47554 (N.D.N.Y. July 5, 2006) (Scullin, J.); *Gill v. Riddick*, 03-CV-1456, 2005 U.S. Dist. LEXIS 5394, at *7 (N.D.N.Y. March 31, 2005) (Treece, M.J.).

**S.D.N.Y. Cases:** *See*, *e.g.*, *Davidson v. Dean*, 204 F.R.D. 251, 257 & n.5 (S.D.N.Y. 2001); *Santiago v. C.O. Campisi*, 91 F. Supp.2d 665, 670 (S.D.N.Y. 2000); *McGann v. U.S.*, 98-CV-2192, 1999 WL 173596, at *2 (S.D.N.Y. March 29, 1999); *Hussein v. Pitta*, 88-CV-2549, 1991 WL 221033, at *4 (S.D.N.Y. Oct. 11, 1991).

**W.D.N.Y. Cases:** *See, e.g., Yip v. Bd. of Tr. of SUNY*, 03-CV-0959, 2004 WL 2202594, at *3 (W.D.N.Y. Sept. 29, 2004).

**E.D.N.Y. Cases:** *Cf. Wechsler v. R D Mgmt. Corp.*, 861 F. Supp. 1153, 1157 (E.D.N.Y. 1994) (explaining that special solicitude is extended to *pro se* litigants because of their lack of legal training, and questioning whether such solicitude should be extended to *pro se* litigants who are in fact sophisticated in the law); *Horton v. Trans World Airlines Corp.*, 169 F.R.D. 11, 16 (E.D.N.Y. 1996) ("[*P*]*ro se* litigants are held to a more lenient standard than professional counsel, with Rule 11's application determined on a sliding scale according to the litigant's level of sophistication.") [citing cases].

[49] *Standley*, 2007 WL 2406909, at *7 & n.34; *Edwards*, 2007 WL 748442, at *2; *Sledge*, 2007 WL 951447, at *3; *see also Hussein*, 1991 WL 221033, at *4 (concluding that experienced *pro se* litigant should no longer be afforded special leniency because continuing to afford him such leniency would be unfair to "numerous attorneys," whose time and energy had already been consumed by plaintiff); Jessica Case, "Pro se Litigants at the Summary Judgment

Kaufman, of the Second Circuit, regarding an active *pro se* litigant nearly 45 years ago:

> He comes before this Court wearing the cloak of a *pro se* applicant, and seeks to extract from us the solicitude ordinarily afforded one appearing without counsel. But this should not shield him from rebuke when merited. He is an intelligent, able and sophisticated litigant, who is no stranger to this Court, having appeared frequently in his own behalf both in the District Court and the Court of Appeals. We would expect that one possessed of his background would be conscious of the outer limits of forceful advocacy and fully aware when his acts transgress those limits. Moreover, we are not to be manipulated by resourceful but meritless moves . . . . [which] serve only to distract us from important judicial business.[50]

Courts relying on the "experience" rationale for revoking a *pro se* litigant's special status look at a variety of factors in assessing whether or not the *pro se* litigant is experienced. Most often, these factors include (1) the number of previous federal court actions filed, (2) the number of previous federal court appeals filed, (3) the number of previous state court actions filed, (4) the number of previous state court appeals filed, and (5) the recency or simultaneity of the actions and/or appeals.[51]

---

Stage: Is Ignorance of the Law an Excuse?" 90 *Ky. L.J.* 701, 735-740 (Spring 2001) (discussing how extending special leniency to *pro se* litigants in some circumstances "distorts the adversarial system and the role of trial judges") [citing cases]; Julie M. Bradlow, "Procedural Due Process Rights of *Pro se* Civil Litigants," 55 *U. Chi. L. Rev*. 659, 672 (Spring 1988) (discussing how "extending too much procedural leniency to a *pro* se litigant risks undermining the impartial role of the judge in the adversary system") [citations omitted].

[50] *Raitport v. Chem. Bank*, 74 F.R.D. 128, 133 (S.D.N.Y. 1977) [citing *Ackert v. Bryan*, No. 27240 (2d Cir. June 21, 1963) (Kaufman, J., concurring)].

[51] *See*, *e.g.*, *Eggersdorf*, 8 F. App'x at 143; *Gummerson*, 201 F.3d at *2; *Flynn*, 32 F.3d at 31; *Standley*, 2007 WL 2406909, at *7 & n.35; *Frawley*, 2006 WL 1742738, at *3 & n.2; *Talbot*, 2005 U.S. Dist. LEXIS 39576, at *18-20 & n.10; *Riddick*, 2005 U.S. Dist. LEXIS 5394, at *7 & n.3; *Dean*, 204 F.R.D. at 257; *Santiago*, 91 F. Supp. 2d at 670; *McGann*, 1999 WL 173596, at *2, 8-10; *McClellan*, 1996 U.S. Dist. LEXIS 8164, at *3-4 & n.3; *Brown*, 1995 U.S. Dist. LEXIS 213, at *2 n.1.

There is, of course, no formula for determining "How many is too many?" However, *generally*, if a *pro se* litigant has filed a dozen or more actions and/or appeals before the date of the decision in question, it is quite possible that he will be deemed to be "experienced."[52] Granted, there are some cases revoking the special status of a *pro se* litigant who has filed *fewer* than a dozen cases.[53] However, there appear to be *more* cases refusing to revoke the special status of a *pro se* litigant who has filed fewer than a dozen cases.[54]

---

[52] *See*, *e.g.*, *Eggersdorf*, 8 F. App'x at 143 (denying leniency to *pro se* civil rights inmate based on fact that at one point plaintiff had ***twelve*** simultaneously pending lawsuits in Northern District alone); *Gummerson*, 201 F.3d at *2 (denying leniency to *pro se* civil rights inmate based on fact that plaintiff had ***twelve*** simultaneously pending lawsuits in Northern District alone); *Standley*, 2007 WL 2406909, at *8 (denying leniency to *pro se* civil rights inmate based on fact that plaintiff had previously filed ***sixteen*** federal or state court actions or appeals); *Talbot*, 2005 U.S. Dist. LEXIS 39576, at *18-20 & n.10 (denying leniency to *pro se* civil rights inmate based on fact that plaintiff had filed ***twenty*** lawsuits in Northern District alone); *Riddick*, 2005 U.S. Dist. LEXIS 5394, at *7 & n.3 (denying leniency to *pro se* civil rights inmate based on fact that plaintiff had filed ***twenty*** lawsuits in Northern District alone). Interestingly, this *de facto* "rule of twelve" is consistent with the California Code of Civil Procedure, which declines to extend a reduction in small-claims-court filing fees to those litigants who have filed more than 12 small-claims lawsuits in the state within the previous 12 months. *See* Cal. Civ. Proc. § 116.230 (2006).

[53] *See*, *e.g.*, *Santiago*, 91 F. Supp. 2d at 670 (denying leniency to *pro se* civil rights inmate based on fact that at one point plaintiff had ***ten*** lawsuits pending in Southern District); *Saunders v. Ricks*, 03-CV-0598, 2006 WL 3051792, at *2 & n.11 (N.D.N.Y. Oct. 18, 2006) (Hurd, J., adopting Report-Recommendation of Lowe, M.J.) (denying leniency to *pro se* civil rights inmate who had previously filed ***eight*** federal court actions or appeals); *McClellan*, 1996 U.S. Dist. LEXIS 8164, at *3-4 & n.3 (denying leniency to *pro se* civil rights inmate based on fact that inmate had filed ***seven*** previous lawsuits against prison officials); *Brown*, 1995 U.S. Dist. LEXIS 213, at *2 n.1 (denying leniency to *pro se* civil rights inmate based on fact that plaintiff had ***seven*** lawsuits pending in Western District).

[54] *See*, *e.g.*, *McEachin v. Faruki*, 03-CV-1442, 2006 WL 721570, at *2 n.3 (N.D.N.Y. March 20, 2006) (refusing to deny leniency to *pro se* civil rights inmate who had filed ***eleven*** other federal lawsuits since 2000); *Pritchett v. Portoundo*, 03-CV-0378, 2005 WL 2179398, at *2 n.3 (N.D.N.Y. Sept. 9, 2005) (refusing to deny leniency to *pro se* civil rights inmate who had filed ***eight*** other federal lawsuits since 1996); *Burke v. Seitz*, 01-CV-1396, 2006 WL 383513, at *2 n.5 (N.D.N.Y. Feb. 13, 2006) (refusing to deny leniency to *pro se* civil rights

One reason for this array of cases is that, in determining whether or not a *pro se* litigant is "experienced," courts sometimes consider additional factors, such as (1) the quality of the *pro se* litigant's submissions to the Court (e.g., whether they are typed, cogent, supported by applicable affidavits, exhibits, and/or memoranda of law, etc),[55] (2) whether or not the *pro se* litigant has been victorious (or partially victorious) in any of his previous actions or appeals,[56] and (3) whether or not the *pro se* litigant has received sufficient formal legal training to familiarize him

---

inmate who had filed ***six*** other federal lawsuits in previous nine years); *Ariola v. Onondaga County Sheriff's Dept.*, 04-CV-1262, 2007 WL 119453, at *3 (N.D.N.Y. Jan. 10, 2007) (Hurd, J., adopting Report-Recommendation of Lowe, M.J.) (refusing to deny leniency to *pro se* civil rights inmate who had previously filed ***five*** actions or appeals in federal or state court); *Smith*, 2006 WL 2805242, at *3 & n.4 (refusing to deny leniency to *pro se* civil rights inmate based on his filing of ***five*** other lawsuits); *Abbas v. Senkowski*, 03-CV-0476, 2005 WL 2179426, at *2 n.4 (N.D.N.Y. Sept. 9, 2005) (continuing to afford special status to *pro se* litigant despite his litigation experience due to his having filed ***three*** other federal actions since 1997); *Loren v. Feerick*, 97-CV-3975, 1997 WL 441939, at *1 & n.9 (S.D.N.Y. Aug. 6, 1997) (continuing to afford special status to *pro se* litigant despite his litigation experience due to his having filed ***three*** previous actions in state court regarding current matter, and two previous actions in district court regarding current matter).

[55] *See, e.g.*, *Saunders*, 2006 WL 3051792, at *2 (in deciding whether *pro se* plaintiff should be denied special solicitude, considering the fact that, among other things, "with regard to the current action, . . . the motion papers that [p]laintiff has submitted over the past several years have often been fairly good–being typed, being accompanied by affidavits, and containing legal memoranda, exhibits, etc."), *accord*, *Standley*, 2007 WL 2406909, at *8.

[56] *See, e.g., Standley*, 2007 WL 2406909, at *8 & n.45 (in deciding whether *pro se* plaintiff should be denied special solicitude, considering the fact that plaintiff had been victorious or partially victorious in at least four of his previous actions or appeals); *Saunders*, 2006 WL 3051792, at *2 (in deciding whether *pro se* plaintiff should be denied special solicitude, considering the fact that plaintiff had settled two of his previous six federal court actions, receiving $25,000 in exchange for his agreement to voluntarily dismiss the actions, and the fact that some of plaintiff's motions in his many actions have been granted); *Ab v. Sekendur*, 03-CV-4723, 2004 WL 2434220, at *5 (N.D. Ill. Oct. 28, 2004) (considering, during decision of whether *pro se* plaintiff should be denied leniency normally afforded inexperienced *pro se* litigants, fact that "[plaintiff] has successfully applied for and received . . . [a] patent, and as the record in this case indicates, he engaged in lengthy business negotiations with Anoto and various other corporations").

with legal procedure and terminology.[57]

Here, over the past ninteen years, Plaintiff has filed at least ***twenty*** other federal court actions (eighteen of which were in the Northern District),[58] and at least ***four*** state court actions.[59]

---

[57] *See*, *e.g.*, *Walker v. Suburban Hosp. Ass'n*, No. 90-1506, 1991 U.S. App. LEXIS 4049, at *3, n.2 (4th Cir. March 13, 1991) ("Walker is not due the lenient treatment accorded pro se litigants. Walker has . . . a law degree. . . . Certainly, the policies underlying the Court's admonitions to accord pro se litigants an understanding view of their pleadings and conduct do not have force in this context."); *Heimbaugh v. San Francisco*, 591 F. Supp. 1573, 1577 (N.D. Cal. 1984) ("While plaintiff appears [pro se], he is schooled in the law, having recently completed law school . . . . There is every reason to hold him to the certification he made by signing the pleadings he has filed in this action."); *Pham v. U.S.*, 317 F.3d 178, 186-188 (2d Cir. 2003) (relying on fact that *pro se* prisoner was "not trained in the law," and that he was "untutored," when explaining reason for extending him special solicitude under the circumstances); *Iwachiw v. N.Y. City Bd. of Educ.*, 2007 U.S. Dist. LEXIS 8040, at *12 (E.D.N.Y. Feb. 5, 2007) ("This policy of liberally construing pro se submissions is driven by the understanding that implicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training.") [internal quotation marks and citations omitted]; *cf.* John C. Rothermich, "Ethical and Procedural Implications of "Ghostwriting" for *Pro Se* Litigants: Toward Increased Access to Civil Justice," 67 *Fordham L. Rev.* 2687, 2697 (Apr. 1999) (arguing that, when the papers of a *pro se* litigant are "ghostwritten" by a legal assistant, the "special leniency" normally afforded to *pro se* litigants is "unwarranted") [citations omitted], *accord*, *Saunders*, 2006 WL 3051792, at *2, n.15.

[58] *See Shaheen v. Leonardo*, 88-CV-1128 (N.D.N.Y.) (prisoner civil rights action filed on 10/31/88); *Shaheen v. Enmy*, 89-CV-0035 (N.D.N.Y.) (prisoner civil rights action filed on 1/12/89); *Shaheen v. Bump*, 89-CV-0124 (N.D.N.Y.) (prisoner civil rights action filed on 2/6/89); *Shaheen v. Higgins*, 89-CV-0125 (N.D.N.Y.) (prisoner civil rights action filed on 2/6/89); *Shaheen v. Atkinson*, 89-CV-0294 (N.D.N.Y.) (prisoner civil rights action filed on 3/17/89); *Shaheen v. Crossman*, 89-CV-0499 (N.D.N.Y.) (prisoner civil rights action filed on 4/18/89); *Shaheen v. King*, 89-CV-0536 (N.D.N.Y.) (prisoner civil rights action filed on 4/27/89); *Shaheen v. King*, 89-CV-0964 (N.D.N.Y.) (prisoner civil rights action filed on 8/7/89); *Shaheen v. King*, 89-CV-1005 (N.D.N.Y.) (prisoner civil rights action filed on 8/18/89); *Shaheen v. Johnson*, 89-CV-1264 (N.D.N.Y.) (prisoner civil rights action filed on 10/23/89); *Shaheen v. Cronin*, 90-CV-0101 (N.D.N.Y.) (prisoner civil rights action filed on 1/26/90); *Shaheen v. Bocchi*, 90-CV-0228 (N.D.N.Y.) (prisoner civil rights action filed on 3/1/90); *Shaheen v. Wills*, 90-CV-0291 (N.D.N.Y.) McAvoy, C.J.) (prisoner civil rights action filed on 3/14/90; dismissed pursuant to Rule 12[b][6] on 7/30/93); *Shaheen v. Leonardo*, 90-CV-0328 (N.D.N.Y.) (prisoner civil rights action filed on 3/23/90); *Shaheen v. Cuomo*, 90-CV-0637 (N.D.N.Y.) (prisoner civil rights action filed on 6/8/90); *Shaheen v. Hollins*, 03-CV-0017 (N.D.N.Y.) (prisoner civil rights

Furthermore, a review of the dockets in the aforementioned actions–most or all of which challenged the conditions of his confinement–reveals that Plaintiff is well aware of the pleading requirements to state a valid claim with regard to prison conditions,[60] and the requirements for opposing a motion for summary judgment on a retaliation claim in particular.[61] Under the circumstances, I find that Plaintiff's special status as a *pro se* litigant should be revoked for the remainder of this action. Again, continuing to afford him such special status would be

---

action filed on 1/3/03); *Shaheen v. Notabartolo*, 04-CV-1366 (N.D.N.Y.) (prisoner civil rights action filed on 11/12/03); *Shaheen v. Filion*, 04-CV-0465 (N.D.N.Y.) (prisoner civil rights action filed on 6/1/04); *Shaheen v. Beaver*, 04-CV-0546 (W.D.N.Y.) (prisoner civil rights action filed on 7/23/04); *Shaheen v. Herbert*, 04-CV-0648 (W.D.N.Y.) (prisoner civil rights action filed on 8/9/04).

[59] *See Smith v. New York*, Index No. 2003-032-117, Claim No. 103499 (N.Y. Ct. Cl.) (filed circa 3/28/01); *Smith v. New York*, Index No. 2002-031-017, Motion No. M-64589 (N.Y. Ct. Cl.) (filed circa 1/18/02); *Smith v. New York*, Index No. 2004-034-545, Claim No. 106268 (N.Y. Ct. Cl.) (filed on 6/24/02); *Smith v. Filion*, Index No. 000524/2004 (N.Y.S. Sup. Ct., Greene County) (Article 78 proceeding filed 6/23/04); *see also Smith v. New York*, Claim No. 109017 (N.Y. Ct. Cl.) (allegedly filed on 2/13/04, *see* Dkt. No. 1, Part 1, ¶ 5.b. & Attachment Thereto [Plf.'s Compl.]).

[60] *See*, *e.g.*, *Shaheen v. Wills*, 90-CV-0291, Order of Dismissal (N.D.N.Y. filed 7/30/93) (McAvoy, C.J.) (granting defendants' motion to dismiss Plaintiff's complaint for failure to state a claim pursuant to Rule 12[b][6]); *Shaheen v. Filion*, 04-CV-0625, 2006 WL 2792739, at *2-3 (N.D.N.Y. Sept. 17, 2006) (Scullin, J., adopting Report-Recommendation of Homer, M.J.) (reciting elements of valid claim of retaliation under First Amendment).

[61] *See*, *e.g.*, *Shaheen v. Filion*, 2006 WL 2792739, at *2-3 (granting defendants' motion for summary judgment with respect to, *inter alia*, Plaintiff's claim of retaliation because "Shaheen fails to show a causal connection between his criticism of prison officials and the alleged filing of a false misbehavior report because he offers only conclusory evidence to support his claim that defendants were aware of his criticism of the prison."); *see also* Dkt. No. 28, Part 1 (reminding Plaintiff of the potential consequences of failing to respond to a motion for summary judgment).

unnecessary (and unfairly prejudicial to Defendants).[62]

## III. ANALYSIS

### A. Whether Plaintiff Has Failed to Allege Facts Plausibly Suggesting, or Adduce Evidence Establishing, a Retaliation Claim Under the First Amendment

Claims of retaliation like those asserted by Plaintiff find their roots in the First Amendment.[63] Central to such claims is the notion that, in a prison setting, corrections officials may not take actions which would have a chilling effect upon an inmate's exercise of First Amendment rights.[64] Because of the relative ease with which claims of retaliation can be incanted, however, courts have scrutinized such retaliation claims with particular care.[65] As the Second Circuit has noted,

> This is true for several reasons. First, claims of retaliation are difficult to dispose of on the pleadings because they involve questions of intent and are therefore easily fabricated. Second, prisoners' claims of retaliation pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration. This is so because virtually any adverse action taken against a prisoner by a prison official--even those otherwise not rising to the level of a constitutional violation--can be characterized as a constitutionally proscribed retaliatory act.[66]

---

[62] In the alternative, I recommend that his special status be revoked due to his lack of candor with the Court. (*See* Dkt. No. 1, Part 1, ¶ 5.b. & Attachment Thereto [Plf.'s Compl., falsely asserting, under oath, that as of the date of signing of his Complaint, 12/7/04, the only other actions that Plaintiff had filed in any state or federal court relating to his imprisonment were those listed in his Complaint, while, in fact, he had filed numerous other such actions.)

[63] *See Gill v. Pidlypchak*, 389 F.3d 379, 380-81 (2d Cir. 2004).

[64] *See Gill*, 389 F.3d at 381-383.

[65] *See Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983).

[66] *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001) [citations omitted], *overruled on other grounds*, *Swierkewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

To prevail on a First Amendment claim of retaliation under 42 U.S.C. § 1983, a plaintiff must prove by a preponderance of the evidence the following: (1) that the speech or conduct at issue was "protected"; (2) that the defendants took "adverse action" against the plaintiff–namely, action that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights; and (3) that there was a *causal connection* between the protected speech and the adverse action--in other words, that the protected conduct was a "substantial or motivating factor" in the defendants' decision to take action against the plaintiff.[67] Under this analysis, adverse action taken for both proper and improper reasons may be upheld if the action would have been taken based on the proper reasons alone.[68]

Generally, evidence that might lead to an inference of a causal connection includes (1) the temporal proximity between the protected conduct and the alleged retaliatory act, (2) the inmate's prior good disciplinary record, (3) vindication at a hearing on the matter, and (4) statements by the defendant regarding his motives.[69] However, as explained above, prisoner retaliation claims are generally viewed "with skepticism and particular care" because "virtually any adverse action taken against a prisoner by a prison official--even those not otherwise rising to the level of a constitutional violation--can be characterized as a constitutionally proscribed retaliatory act."[70] Indeed, the Second Circuit has established a "presumption that a prison official's acts to maintain

---

[67] *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Gill*, 389 F.3d at 380 (citing *Dawes v. Walker*, 239 F.3d 489, 492 [2d Cir. 2001]).

[68] *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) [citations omitted].

[69] *See Colon v. Coughlin*, 58 F.3d 865, 872-73 (2d Cir. 1995).

[70] *Dawes*, 239 F.3d at 492.

order are done for a proper purpose," explaining that "the conclusion that the state action would have been taken in the absence of improper motives is readily drawn in the context of prison administration where we have been cautioned to recognize that prison officials have broad administrative and discretionary authority over the institutions they manage."[71] Because of this presumption, a "[p]laintiff has the initial burden of showing that an improper motive played a substantial part in the defendant's action. The burden then shifts to the defendant to show it would have taken exactly the same action absent the improper motive."[72] If the defendant meets this burden, or if the plaintiff fails to meet his or her initial burden, summary judgment is appropriate.[73]

**1. Rule 12(b)(6) Analysis**

The problem with the bulk of Plaintiff's retaliation claim lies not with the first and second elements discussed above but with the third element. Clearly, Plaintiff has alleged facts plausibly suggesting that he had engaged in "protected" speech or conduct under the First Amendment, namely, the filing of the federal and state court actions against prison officials challenging the conditions of his confinement.[74] Moreover, I find that Plaintiff has alleged facts plausibly

---

[71] *Hynes v. Squillace*, 143 F.3d 653, 657 (2d Cir. 1998).

[72] *Scott v. Coughlin*, 344 F.3d 282, 288 (2d Cir. 2003) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 [1977]).

[73] *See Davidson v. Chestnut*, 193 F.3d 144, 149 (2d Cir. 1999).

[74] (Dkt. No. 1, Part 1, ¶ 5.b. & Attachment Thereto [Plf.'s Compl.].) *See Lewis v. Casey*, 518 U.S. 343, 355 (1996) ("*Bounds* [*v. Smith*, 430 U.S. 817 (1977)] does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any *other* litigating

suggesting that Defendants took "adverse action" against him, by alleging that Defendants wrongfully caused him to be subjected to "keeplock" confinement for two fifteen-day periods and two thirty-day periods.[75] (Having said that, I find that Plaintiff's somewhat related allegations of lost privileges, standing alone, would be too *de minimis* to constitute "adverse action,"[76] and his allegations of repetitive searches of his prison cell in which he possesses no reasonable expectation of privacy, standing alone, would appear not be "adverse action.")[77] In

---

capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.") [emphasis in original].

75 (Dkt. No. 1, Part 1, ¶¶ 6.A. 6.B., 6.C., 6.E. [Plf.'s Compl.].) *See Gill v. Pidlypchak*, 389 F.3d 379, 384 (2d Cir. 2004) ("Gill has sufficiently alleged . . . adverse action on the part of the defendants–the filing of false misbehavior reports against Gill and his sentence of three weeks in keeplock–that would deter a prisoner of ordinary firmness from vindicating his or her constitutional rights through the grievance process and the courts . . . .") (Scullin, J., sitting by designation); *Gill v. Hoadley,* 261 F. Supp.2d 113, 123-24 (N.D.N.Y. 2003) (Peebles, M.J.) (recommending, *inter alia*, that district judge deny defendants' motion to dismiss for failure to state a claim because, *inter alia*, prisoner's allegation of keeplock confinement for periods of four days, twenty-one days and twenty-one days constituted allegation of "adverse action" for purposes of First Amendment retaliation claim), *adopted*, 2007 U.S. Dist. LEXIS 33122 (N.D.N.Y. May 4, 2004) (Scullin, J.); *Auleta v. LaFrance,* 233 F. Supp.2d 396, 402 (N.D.N.Y. 2002) (Kahn, J.) (denying defendants' motion to dismiss for failure to state a claim because, *inter alia*, prisoner's allegation of seven and one-half days in keeplock confinement constituted allegation of "adverse action" for purposes of First Amendment retaliation claim) [collecting cases].

76 *Bartley v. Collins*, 95-CV-10161, 2006 U.S. Dist. LEXIS 28285, at *22 (S.D.N.Y. May 10, 2006) ("Bates' misbehavior report against plaintiff and Collins's first report, which both resulted in plaintiff's temporary loss of various privileges such as permission to visit the commissary, likewise do not constitute adverse action because they were *de minimis*: they do not constitute penalties that would deter a similarly situated prisoner of ordinary firmness from exercising his constitutional rights.") [citations omitted].

77 *See Battice v. Phillip*, 04-CV-0669, 2006 WL 2190565, at *7 (E.D.N.Y. Aug. 2, 2006) ("The Second Circuit has not addressed whether a cell search can constitute an adverse action for purposes of a First Amendment retaliation claim; however, many district courts in this circuit have concluded that it does not.") [collecting cases].

any event, Plaintiff has not alleged facts plausibly suggesting a *causal connection* between that "protected" speech or conduct and the "adverse action."

Specifically, in his Complaint, Plaintiff alleges no facts plausibly suggesting that any of the three Defendants in this action even *knew* that he had filed a previous federal or state court action against a prison official challenging the conditions of his confinement.[78] For example, Plaintiff does not allege facts plausibly suggesting that any of the federal or state court actions he had previously filed against prison officials asserted a claim against any of the three Defendants in this action.[79] Nor does Plaintiff allege facts plausibly suggesting that any of the three Defendants came across, and read, any of Plaintiff's legal papers during one of their searches of his prison cell.[80] Nor does Plaintiff allege facts plausibly suggesting that any of the three Defendants *told* Plaintiff that they were searching his cell or filing an (allegedly) false misbehavior report against him *because* he had previously filed one or more federal or state court actions against prison officials challenging the conditions of his confinement.[81]

Granted, Plaintiff asserts, in his purported Rule 7.1 Response (which neither contains citations to the record, nor is organized into paragraphs matching those of Defendants' Rule 7.1 Statement), that "Defendant (McIntyre) while searching Plaintiff's cell did read [some of Plaintiff's legal files] and complain to Plaintiff [about] his bitterness towards prisoners and

---

[78] (*See generally* Dkt. No. 1, Part 1, ¶ 6 & Attachment Thereto [Plf.'s Compl.].)

[79] (*Id.* at ¶¶ 5, 6 & Attachments Thereto.)

[80] (*Id.* at ¶ 6 & Attachment Thereto.)

[81] (*Id.* at ¶ 6 & Attachment Thereto.)

[Plaintiff for] suing the State prison system . . . ."[82] However, I find that such an assertion may not, under the circumstances, successfully amend the allegations of Plaintiff's Complaint for two independent reasons: (1) the assertion in question is not consistent (as it must be) with the allegations of that Complaint, which are conspicuously silent with regard to such a highly material admission by Defendant McIntyre;[83] and (2) because Plaintiff's special status as a *pro se* litigant has been revoked, his Complaint may not be construed with the sort of extraordinarily solicitude that would be necessary to permit it to be effectively amended through such an unsworn assertion made not in response to a motion to dismiss (which comes relatively early in an action) but a summary judgment motion (which typically comes relatively late in an action, for example, after discovery has occurred).[84]

Moreover, even if the Court were to use the assertion in question to amend the allegations of Plaintiff's Complaint, the assertion would not do much to save the bulk of Plaintiff's retaliation claim: by acknowledging that the comment in question was made only by Defendant McIntyre during a search of Plaintiff's cell, Plaintiff (1) in no way alleges facts plausibly

---

82 (Dkt. No. 34, at 2-3, ¶ 6 [Plf.'s Rule 7.1 Response].)

83 *See Donhauser v. Goord*, 314 F. Supp.2d 119, 212 (N.D.N.Y. 2004) (Hurd, J.) ("[I]n cases where a pro se plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside the complaint to the extent they 'are consistent with the allegations in the complaint.'") [citations omitted], *vacated in part on other grounds*, 317 F. Supp.2d 160 (N.D.N.Y. 2004) (Hurd, J.).

84 *Cf. Gadson v. Goord,* 96 Civ. 7544, 1997 WL 714878, *1, n. 2 (S.D.N.Y. Nov. 17, 1997) ("Generally, a court may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss. However, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider plaintiff's additional materials, such as his opposition memorandum.") (citing, *inter alia*, *Gill v. Mooney*, 824 F.2d 192, 195 [2d Cir. 1987] [considering plaintiff's response affidavit on motion to dismiss]).

suggesting any knowledge of Plaintiff's litigiousness by Defendants Frazier and Hoessle, and (2) acknowledges that at least one of the searches would have occurred even without Defendant McIntyre's (alleged) discovery of Plaintiff's litigiousness.

Simply stated, given the absence of factual allegations plausibly suggesting that any of the three Defendants in this action even *knew* that Plaintiff had filed a previous federal or state court action against prison officials, and given the six-month delay between the filing of Plaintiff's last (alleged) federal or state court action against prison officials (occurring on March 7, 2004)[85] and the occurrence of the first instance of adverse action in question (on September 28, 2004), I find that Plaintiff has failed to state a claim of retaliation against all three Defendants *arising from Plaintiff's protected activity of filing federal and state court actions against prison officials challenging the conditions of his confinement*.

However, I reach a different conclusion with respect to Plaintiff's more discrete claim of retaliation against *Defendants McIntyre and Hoessle arising from Plaintiff's (alleged) protected activity of challenging one or more disciplinary charges at a disciplinary hearing.* As described above in Part I.A. of this Report-Recommendation, Plaintiff alleges that, on October 2, 2004, Defendant McIntyre, in a conspiratorial manner, told Defendant Hoessle, in the Coxsackie C.F. mess hall, that he wanted Plaintiff "packed-up [sic] for beating his previous misbehavior report."[86] (While it is not entirely clear from Plaintiff's Complaint, it appears that the referenced "previous misbehavior report" had allegedly been issued by Defendant McIntyre on September 28, 2004, and had allegedly charged Plaintiff with refusing to obey a direct order, being out of

---

[85] (Dkt. No. 1, Part 1, ¶ 5.b. & Attachment Thereto [Plf.'s Compl.].)

[86] (Dkt. No. 1, Part 1, ¶ 6.C. [Plf.'s Compl.].)

place, and violating other, unspecified facility regulations.[87]) Moreover, Plaintiff alleges that, later that day (on October 2, 2004), Defendant Hoessle related Defendant McIntyre's instruction to an unknown corrections officer assigned to A Block of Coxsackie C.F.,[88] and then, as a result of Defendant McIntyre's instruction, Defendant Hoessle issued a misbehavior report falsely charging Plaintiff with smoking a cigarette in his cell,[89] which further resulted in Plaintiff being subjected to keeplock confinement for thirty (30) days.[90]

While I have not found many cases addressing the issue, I will assume for the sake of argument that *actively* and *successfully* challenging a charge contained in a misbehavior report, during a prison disciplinary hearing, is "protected" conduct or speech under the First Amendment. The requirement that the challenge be *active* (e.g., through the introduction of witness testimony and documentary evidence at the disciplinary hearing, or the filing of an appeal thereafter) results from the rule, announced by the Supreme Court in *Lewis v. Casey*, 518 U.S. 343 (1996), that the only types of prisoner litigation activity protected by the First Amendment are (1) an "attack [on] their sentences, directly or collaterally" (e.g., through the filing of state court appeals or a federal habeas corpus action), and (2) a "challenge [to] the conditions of their confinement" (e.g., through the filing of a federal court civil rights action

---

[87] (*Id*. at ¶¶ 6, 6.A.)

[88] (Dkt. No. 1, Part 1, ¶ 6.C. [Plf.'s Compl.].)

[89] (*Id*.)

[90] (*Id*.)

pursuant to 42 U.S.C. § 1983).[91] The requirement that the challenge be *successful* results from the fact that, if a prisoner was not successful in his challenge to a disciplinary charge, then his so called "protected conduct" would appear to be inextricably intertwined with his (properly determined) violation of a prison regulation; and it is rather well settled that "[t]he violation of a prison regulation . . . is not protected conduct."[92]

---

91 *Lewis v. Casey*, 518 U.S. 343, 355 (1996) ("*Bounds* [*v. Smith*, 430 U.S. 817 (1977)] does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.") [emphasis in original]; *see, e.g., Brookins v. Kolb,* 990 F.2d 308, 313 (7th Cir. 1993) ("[E]ven though [the plaintiff] contends that [his] letter [sent to prison officials who were about to conduct a disciplinary hearing on charges against another inmate] represented an exercise of his right to petition the government for the redress of grievances on behalf of [that other inmate], the content of the letter fails to demonstrate that [the plaintiff] was exercising such a right. . . . He was merely suggesting that lie detector tests be given to help determine whether the allegations [against the other inmate] were true before [the other inmate] had his disciplinary hearing . . . ."); *Ford v. Rodda*, 99-CV-10090, 2001 U.S. Dist. LEXIS 24956, at *21-22 (E.D. Mich. Jan. 4, 2001) ("Clearly, *presenting a defense* is a right protected by the First Amendment, even in a prison hearing setting . . . .") [emphasis added; citing no cases].

92 *Hall v. Beavin*, No. 98-3803, 1999 U.S. App. LEXIS 29700, at *5 (6th Cir. Nov. 8, 1999) ("The violation of a prison regulation . . . is not protected conduct. . . . [Plaintiff] has not stated a retaliation or First Amendment claim as he produced no evidence that he engaged in protected conduct. The disciplinary charges and actions followed an investigation involving [Plaintiff] which showed that [he] engaged in illegal conduct."); *see, e.g., Floyd v. Dugal*, 2003 U.S. Dist. LEXIS 24025, at *16 (E.D. Pa. Dec. 16, 2003) ("If [the defendant] requested a [prison administrative] support team hearing regarding [the prisoner's] employment [at the prison] with the intent to punish [the prisoner] for defending himself at the [prison] misconduct hearing and in retaliation for the *dismissal* of [the prisoner's] misconduct charges, [the defendant] is liable for unconstitutional retaliation.") [emphasis added]; *Lindell v. O'Donnell*, 05-CV-0004, 2005 U.S. Dist. LEXIS 24767, at *78 (W.D. Wisc. Oct. 21, 2005) (appearing to acknowledge legal sufficiency of retaliation claim alleging that protected conduct consisted of "*successfully* challeng[ing] a conduct report" but rejecting that claim because prisoner had failed to exhaust his available administrative remedies with respect to that claim before filing suit) [emphasis added]; *cf. Hatch v. Ragland*, No. 95-2525, 1997 U.S. App. LEXIS 2374, at *6-7 (7th Cir. Jan. 29, 1997)

Granted, there are several facts missing from Plaintiff's allegations, such as (1) which of the charges, which had been filed against Plaintiff on September 28, 2004, Plaintiff subsequently "beat," (2) whether Plaintiff actively challenged the charge or charges ultimately dismissed, (3) when his disciplinary hearing dismissing one or more of those charges occurred, and who conducted that hearing, (4) how he knew that Defendant McIntyre had issued this instruction to Defendant Hoessle in the Coxsackie C.F. mess hall on October 2, 2004, and (5) how he knew that Defendant Hoessle was motivated by the instruction when he issued Plaintiff a misbehavior report on or after October 2, 2004. However, for the sake of argument, I will assume that, under Rule 8's liberal notice pleading standard, Plaintiff has (barely) alleged facts plausibly suggesting retaliation by Defendants McIntyre and Hoessle in response to Plaintiff's protected activity of challenging his disciplinary charges at a disciplinary hearing. (Whether or not that claim survives Defendants' motion for summary judgment, however, is another matter.)

As a result, I recommend that the Court dismiss, on Rule 12(b)(6) grounds, Plaintiff's First Amendment claim of retaliation against all three Defendants arising from Plaintiff's protected activity of filing federal and state court actions against prison officials challenging the conditions of his confinement, but that the Court *not* dismiss, on Rule 12(b)(6) grounds, Plaintiff's First Amendment claim of retaliation against Defendants McIntyre and Hoessle arising from Plaintiff's protected activity of challenging his disciplinary charges at a disciplinary hearing.

---

(not treating prisoner's challenges to procedures followed at disciplinary hearing as protected conduct for purposes of a claim of retaliation under First Amendment).

**2. Rule 56 Analysis**

Because I have already found that adequate grounds exist upon which to base a recommendation that the Court dismiss Plaintiff's First Amendment claim of retaliation against all three Defendants arising from Plaintiff's protected activity of filing federal and state court actions against prison officials challenging the conditions of his confinement, I need not address in detail Defendants' argument that insufficient record evidence exists to create a question of fact for purposes of a summary judgment motion, with respect to that claim. For the sake of brevity, I will simply report that I have reviewed the record evidence and I have found no evidence establishing a *causal connection* between (1) Plaintiff's filing of any of the aforementioned federal or state court actions and (2) Defendants' searches of Plaintiff's prison cell and/or Defendants' filing of misbehavior reports against Plaintiff. Indeed, several pieces of record evidence affirmatively establish the *lack* of a causal connection.[93] Moreover, other portions of the record reveal the *speculative* nature of Plaintiff's theory of a causal connection between his previous court actions and his cell searches and/or misbehavior reports.[94]

With respect to Plaintiff's First Amendment claim of retaliation against Defendants McIntyre and Hoessle arising from Plaintiff's (alleged) protected activity of challenging his

---

[93] (*See*, *e.g.*, Dkt. No. 35, Part 3, at 4 [Ex. B to Schwartz Decl., attaching Coxsackie C.F. Intradepartmental Communication dated 10/2/04 from Defendant McIntyre to Sgt. Hofaker, stating, *inter alia*, "I have searched [Plaintiff's] cell in the past but did not read his litigation [materials] as he claims."].)

[94] (Dkt. No. 35, Part 3, at 7 [Ex. B to Schwartz Affirm., attaching grievance dated 9/28/04 from Plaintiff, alleging, "[T]he only thing I can conclude [is] that . . . [Defendant McIntyre] through official revenge and retaliation is angry at me because of my activities as a prison litigant wherein [sic] I filed a lot of civil litigation against the state prison system including staff here at Coxsackie . . . . [Defendant McIntyre] has searched and read a lot of the litigation [materials] in my cell . . . since I've been . . . [housed in this cell block]."].)

disciplinary charges at a disciplinary hearing, a more detailed analysis is appropriate. As an initial matter, the sole record evidence adduced by Plaintiff that he "beat" any disciplinary charge is contained in Paragraph 6.C. of Plaintiff's Complaint, which, because it is verified, has the effect of an affidavit for purposes of a motion for summary judgment.[95] Specifically, that paragraph contains a sworn assertion that, on October 2, 2004, Defendant McIntyre, in a conspiratorial manner, told Defendant Hoessle, in the Coxsackie C.F. mess hall that he wanted Plaintiff "packed-up [sic] for beating his previous misbehavior report."[96] As stated above, while it is not entirely clear from Plaintiff's Complaint, it appears that the referenced "previous misbehavior report" had (allegedly) been issued by Defendant McIntyre on September 28, 2004, and had (allegedly) charged Plaintiff with refusing to obey a direct order, being out of place, and violating other (unspecified) facility regulations.[97] This interpretation of Paragraph 6.C. of Plaintiff's Complaint is consistent with the record evidence adduced by Defendants, specifically the DOCS Disciplinary Hearing Disposition they provide, which indicates that, on September 30, 2004, Plaintiff was found not guilty of Defendant McIntyre's charge of refusing a direct order, but found guilty of the charges of being out of place and moving in violation of prison regulations.[98]

However, neither Plaintiff's Verified Complaint nor any other portion of the record

---

[95] *See*, *supra*, Part II.A. of this Report-Recommendation.

[96] (Dkt. No. 1, Part 1, ¶ 6.C. [Plf.'s Verified Compl.].)

[97] (*Id*. at ¶¶ 6, 6.A.)

[98] (Dkt. No. 35, Part 4, at 10, 11 [Ex. C to Schwartz Affirm., attaching Inmate Misbehavior Report dated 9/28/04 filed by Defendant McIntyre against Plaintiff, and DOCS Disciplinary Hearing Disposition of 9/30/04].)

contains evidence that is critical to Plaintiff's claim: evidence that, at the disciplinary hearing in question, Plaintiff *actively* challenged the charge or charges that were dismissed (e.g., through the introduction of witness testimony and documentary evidence at the hearing, or the filing of an appeal after the hearing).[99] This detail is critical because the sole materiality of Plaintiff's sworn assertion that he "beat" the referenced misbehavior report depends on the extent that, when he did so, he was engaging in conduct or speech that is "protected" by the First Amendment. And the only type of conduct or speech that is "protected" by the First Amendment at a prison disciplinary hearing is conduct or speech that is *active* (and that is *successful* in the sense that it results in dismissal of the disciplinary charge in question). *See*, *supra*, notes 91-92 of this Report-Recommendation. Merely being the beneficiary of the dismissal of a charge at a prison disciplinary hearing is not any sort of "conduct" or "speech" at all, much less the more limited type of "conduct" or "speech" that is protected by the First Amendment. *Id*.

The closest Plaintiff comes to adducing the aforementioned evidence is when, in Paragraph 11 of a declaration offered in response to Defendants' motion, Plaintiff appears to assert that defense counsel is in possession of a transcript of the referenced disciplinary hearing, at which Plaintiff was present and testified. Specifically, Plaintiff asserts:

> Copies of the . . . transcripts . . . [from] all four (4) [disciplinary] hearings regarding the written reports written by defendants McIntyre, Frazier, and Hoessle . . . [against] Plaintiff were . . . [obtained] by defendants['] attorneys . . . [,] which [copies] the Attorney General is [maintaining], and has always maintained[,] since [defendants' attorneys] ordered [transcripts] setting forth any and all particulars regarding Plaintiff's keeplocked [sic] status as to dates, time, and

---

[99] (*See generally* Dkt. No. 1, Part 1, ¶ 6.C. [Plf.'s Verified Compl.]; Dkt. No. 35, Part 4, at 11 [Ex. C to Schwartz Affirm., attaching DOCS Disciplinary Hearing Disposition of 9/30/04].)

> people, and the subject matter testimony of Plaintiff and the defendants.[100]

However, Plaintiff does not attach copies of those transcripts to his declaration (or to any document submitted in response to Defendants' motion).[101] Nor do Defendants attach those transcripts to any of their submissions.[102] As a result, those transcripts are not part of the record before the Court on Defendants' motion for summary judgment. Moreover, Plaintiff's implied assertion that he provided testimony at one or more of his disciplinary hearings is not evidence that he actively challenged the dismissed charge or charges in question.

In any event, even if Plaintiff had adduced record evidence that he had engaged in "protected" conduct or speech by challenging one or more disciplinary charges that was or were dismissed, I would find that he has adduced no record evidence from which a rational fact-finder could conclude that there was a *causal connection* between such "protected" conduct or speech and the adverse action that Plaintiff (allegedly) experienced when Defendant Hoessle issued a misbehavior report falsely charging Plaintiff with smoking a cigarette in his cell.[103] The only such "evidence" that Plaintiff has adduced is his sworn assertion that, on October 2, 2004, at some point before he was issued the aforementioned false misbehavior report by Defendant Hoessle, Defendant McIntyre told Defendant Hoessle, in the Coxsackie C.F. mess hall that he

---

[100] (Dkt. No. 34, at 18, ¶ 11 [Plf.'s Decl. in Response to Defs.' Motion].)

[101] (*See generally* Dkt. No. 34 [Plf.'s Papers in Response to Defs.' Motion].)

[102] (*See generally* Dkt. No. 28 [Defs.' Motion for Summ. Judgment]; Dkt. No. 35 [Defs.' Reply Papers].)

[103] (Dkt. No. 1, Part 1, ¶ 6.C. [Plf.'s Compl.].)

wanted Plaintiff "packed-up [sic] for beating his previous misbehavior report."[104]

This self-serving assertion by Plaintiff does not contain any specific details indicating *personal knowledge* by Plaintiff of the fact asserted, namely, that Defendant McIntyre had issued this instruction to Defendant Hoessle in the Coxsackie C.F. mess hall on October 2, 2004.[105] Moreover, the fact asserted is largely, if not totally, unsubstantiated by any other direct evidence in the record. For example, Plaintiff adduces no evidence that *Defendant Hoessle* made any sort

---

[104] (*Id.*)

[105] I note that Plaintiff's allegation, in his unsworn grievance of October 3, 2004, that he "overheard" this instruction (or a related remark) is not *admissible evidence*. (Dkt. No. 35, Part 4, at 14 [Ex. C to Schwartz Affirm., attaching grievance dated 10/3/04 from Plaintiff].) As an initial matter, such unsworn claims are not *evidence* of the events giving rise to the claims at all but mere *allegations*, which are always insufficient to create a question of fact for purposes of summary judgment. *See* Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is made [by a defendant] and supported as provided in this rule, the [plaintiff] may not rest upon the mere allegations . . . of the [plaintiff's] pleading . . . ."); *Applegate v. Top Assoc.*, 425 F.2d 92, 97 (2d Cir. 1970) (stating that the purpose of Rule 56[e] is to "prevent the exchange of affidavits on a motion for summary judgment from degenerating into mere elaboration of conclusory pleadings"); *see, e.g.*, *Mays v. Rhodes*, 255 F.3d 644, 648 (8th Cir. 2001) ("unsworn accounts [of events] found in grievance forms filed by [prison] inmates" did not constitute evidence for purposes of motion for summary judgment) [citations omitted]; *Boyd v. Pork*, 01-CV-7957, 2003 U.S. Dist. LEXIS 7485, at *19 (N.D. Ill. Apr. 30, 2003) ("[The prisoner's] statement in the grievance is unsworn and of no evidentiary value [for purposes of the defendant's motion for summary judgment]."); *cf. David v. Lester*, 156 F. Supp.2d 588, 592, n.6 ("These unsworn grievance responses cannot be considered evidence from either party as to what actually happened or why. At the most, they are evidence as to the answers that [the prisoner] received to his grievances."). In any event, even if such unsworn claims did somehow constitute evidence, they could not be used for purposes of summary judgment because they are *inadmissible* at trial as hearsay. *See* Fed. R. Civ. P. 56(e) (requiring summary judgment decisions to be based on matters that would be "admissible in evidence"); Fed. R. Evid. 801(c) ("'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."); Fed. R. Evid. 802 ("Hearsay is not admissible except as provided by these rules or by other rules prescribed by the Supreme Court pursuant to statutory authority or by Act of Congress."); *see, e.g.*, *Jordan v. Van Winkle*, 04-CV-0647, 2006 U.S. Dist. LEXIS 76733, at *7-8 (N.D. Ind. Oct. 6, 2006) (prisoner's "unsworn grievances" were not able to create question of fact for purposes of summary judgment since they were not admissible to prove truth of statements contained in those grievances).

of statement to Plaintiff indicating a retaliatory motive during the issuance of the referenced misbehavior report (or at any time).[106] Indeed, the record evidence is to the contrary.[107]

Nor does the record contain any of the other types of evidence that the Second Circuit has stated might lead to an inference of a causal connection between "protected" activity and adverse action. For example, Plaintiff has adduced no evidence that he was ever vindicated of the charge of smoking a cigarette in his cell. Rather, the record evidence indicates he was convicted of that charge.[108] Nor has Plaintiff even adduced any evidence that, before Defendant Hoessle issued the referenced misbehavior report on October 2, 2004, Plaintiff had a good disciplinary record. Again, the record evidence is to the contrary.[109]

---

[106] Again, Plaintiff's allegation, in his grievance of October 3, 2004, that, in response to the referenced instruction by Defendant McIntyre, Defendant Hoessle said, "Consider it done" is not *evidence* for the reason stated above in note 105 of this Report-Recommendation. (Dkt. No. 35, Part 4, at 13 [Ex. C to Schwartz Affirm., attaching grievance dated 10/3/04 from Plaintiff].)

[107] (*See* Dkt. No. 35, Part 4, at 4 [Ex. C to Schwartz Affirm., attaching Coxsackie C.F. Memorandum dated 10/21/04, from Defendant Hoessle to Sgt. Mugs, reporting that, at 7:02 a.m. on 10/2/04, while he was "taking the chow list on [Plaintiff's] cell block," Defendant Hoessle witnessed Plaintiff smoking in his cell, and that, as a result, later that day, he issued Plaintiff a misbehavior report]; *accord*, Dkt. No. 35, Part 4, at 6 [Ex. C to Schwartz Affirm., attaching Inmate Misbehavior Report dated 10/2/04, filed by Defendant Hoessle against Plaintiff for smoking in his cell at 7:02 a.m.].)

[108] (Dkt. No. 1, Part 1, ¶ 6.C. [Plf.'s Compl., offering sworn assertion that, upon conviction of Defendant Hoessle's charge of smoking, Plaintiff "was subjected to 30 days keeplocked [sic]" confinement].)

[109] (*See* Dkt. No. 35, Parts 6, 7 [Exs. 1, 2 to Carroll Decl., attaching grievance filed by Plaintiff on 11/23/03 alleging staff misconduct resulting in filing of disciplinary charges against Plaintiff, and grievance filed by Plaintiff on 3/23/04 alleging wrongful removal of Plaintiff from his former position as Inmate Liaison Committee Chairman resulting in conviction on aforementioned disciplinary charges and sentence of 60 days keeplock confinement]; Dkt. No. 35, Part 4, at 11 [Ex. C to Schwartz Affirm., attaching DOCS Disciplinary Hearing Disposition indicating that, on 9/30/04, Plaintiff had been convicted of two disciplinary charges].)

As a result, I recommend that the Court dismiss, on Rule 56 grounds, Plaintiff's First Amendment claim of retaliation against Defendants McIntyre and Hoessle arising from Plaintiff's (alleged) protected activity of challenging his disciplinary charges at a disciplinary hearing. I also recommend that, should the Court decline to dismiss Plaintiff's other First Amendment claim (i.e., his claim of retaliation against all three Defendants arising from Plaintiff's alleged protected activity of filing federal and state court actions against prison officials challenging the conditions of his confinement) on Rule 12(b)(6) grounds, the Court dismiss that claim, in the alternative, on Rule 56 grounds.

**B. Whether Plaintiff Has Failed to Allege Facts Plausibly Suggesting, or Adduce Evidence Establishing, that He Exhausted His Available Administrative Remedies Before Filing this Action in Federal Court**

Because I have already found that adequate grounds exist upon which to base a recommendation that the Court dismiss Plaintiff's First Amendment claims of retaliation against Defendants, I need not address in detail Defendants' alternative exhaustion argument. In the interest of thoroughness, I will address that argument.

The Prison Litigation Reform Act of 1995 ("PLRA") requires that prisoners who bring suit in federal court must first exhaust their available administrative remedies: "No action shall be brought with respect to prison conditions under §1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."[110] "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege

---

[110] 42 U.S.C. § 1997e.

excessive force or some other wrong."[111] The Department of Correctional Services ("DOCS") has available a well-established three-step inmate grievance program.[112]

Generally, the DOCS Inmate Grievance Program ("IGP") involves the following procedure.[113] First, an inmate must file a complaint with the facility's IGP clerk within fourteen (14) calendar days of the alleged occurrence. A representative of the facility's inmate grievance resolution committee ("IGRC") has seven working days from receipt of the grievance to informally resolve the issue. If there is no such informal resolution, then the full IGRC conducts a hearing within seven (7) working days of receipt of the grievance, and issues a written decision within two (2) working days of the conclusion of the hearing. Second, a grievant may appeal the IGRC decision to the facility's superintendent within four (4) working days of receipt of the IGRC's written decision. The superintendent is to issue a written decision within ten (10) working days of receipt of the grievant's appeal. Third, a grievant may appeal to the central office review committee ("CORC") within four (4) working days of receipt of the superintendent's written decision. CORC is to render a written decision within twenty (20) working days of receipt of the appeal. It is important to emphasize that any failure by the IGRC or the superintendent to timely respond to a grievance or first-level appeal, respectively, can be appealed to the next level, including CORC, to complete the grievance process.[114]

---

111 *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

112 7 N.Y.C.R.R. § 701.7.

113 7 N.Y.C.R.R. § 701.7; *see also White v. The State of New York*, 00-CV-3434, 2002 U.S. Dist. LEXIS 18791, at *6 (S.D.N.Y. Oct 3, 2002).

114 7 N.Y.C.R.R. § 701.6(g) ("[M]atters not decided within the time limits may be appealed to the next step."); *Hemphill v. New York*, 198 F. Supp.2d 546, 549 (S.D.N.Y. 2002),

Generally, if a prisoner has failed to follow each of these steps prior to commencing litigation, he has failed to exhaust his administrative remedies.[115] However, the Second Circuit recently held that a three-part inquiry is appropriate where a defendant contends that a prisoner has failed to exhaust his available administrative remedies, as required by the PLRA.[116] First, "the court must ask whether [the] administrative remedies [not pursued by the prisoner] were in fact 'available' to the prisoner."[117] Second, if those remedies were available, "the court should . . . inquire as to whether [some or all of] the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it . . . or whether the defendants' own actions inhibiting the [prisoner's] exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense."[118] Third, if the remedies were available and some of the defendants did not forfeit, and were not estopped from raising,

---

*vacated and remanded on other grounds*, 380 F.3d 680 (2d Cir. 2004); *see, e.g., Croswell v. McCoy*, 01-CV-0547, 2003 WL 962534, at *4 (N.D.N.Y. March 11, 2003) (Sharpe, M.J.) ("If a plaintiff receives no response to a grievance and then fails to appeal it to the next level, he has failed to exhaust his administrative remedies as required by the PLRA."); *Reyes v. Punzal,* 206 F. Supp.2d 431, 433 (W.D.N.Y. 2002) ("Even assuming that plaintiff never received a response to his grievance, he had further administrative avenues of relief open to him."); *Nimmons v. Silver*, 03-CV-0671, Report-Recommendation, at 15-16 (N.D.N.Y. filed Aug. 29, 2006) (Lowe, M.J.) (recommending that the Court grant Defendants' motion for summary judgment, in part because plaintiff adduced no evidence that he appealed the lack of a timely decision by the facility's IGRC to the next level, namely to either the facility's superintendent or CORC), *adopted by* Decision and Order (N.D.N.Y. filed Oct. 17, 2006) (Hurd, J.).

[115] *Rodriguez v. Hahn*, 209 F. Supp. 2d 344, 347-48 (S.D.N.Y. 2002); *Reyes v. Punzal*, 206 F. Supp. 2d 431, 433 (W.D.N.Y. 2002).

[116] *See Hemphill v. State of New York*, 380 F.3d 680, 686, 691 (2d Cir. 2004).

[117] *Hemphill*, 380 F.3d at 686 (citation omitted).

[118] *Id.* [citations omitted].

the non-exhaustion defense, "the Court should consider whether 'special circumstances' have been plausibly alleged that justify the prisoner's failure to comply with the administrative procedural requirements."[119]

**1. Rule 12(b)(6) Analysis**

To the extent that Defendants' argue that Plaintiff has failed to allege facts plausibly suggesting that he exhausted his available administrative remedies before filing this action in federal court,[120] I reject that argument.

For some years now, it has been the majority rule (followed by the Second Circuit) that a prisoner's fulfillment of his duty to exhaust his administrative remedies under the PLRA is not a fact that the prisoner has to plead in order to state a claim under 42 U.S.C. § 1983 but a fact that may be challenged by a defendant through an affirmative defense (such as on a motion for summary judgment) established by the PLRA. *See, e.g., Jenkins v. Haubert*, 179 F.3d 19, 28-29 (2d Cir. 1999). Recently, the Supreme Court upheld this interpretation of the exhaustion requirement, prohibiting circuits (such as the Sixth, Tenth and Eleventh Circuits) from using exhaustion as a heightened pleading requirement in prisoner civil rights case. *See Jones v. Block*, 127 S. Ct. 910, 914-915, 918-923 (2007). "[T]his is not to say that failure to exhaust cannot be a basis for dismissal for failure to state a claim." *Block*, 127 S. Ct. at 921. Rather, it means that a prisoner has no duty to plead facts plausibly suggesting that he exhausted his administrative

---

119 *Id*. [citations and internal quotations omitted].

120 (*See*, *e.g.*, Dkt. No. 28, Part 7, at 2, 6 [Defs.' Mem. of Law, arguing that the Court should dismiss Plaintiff's Complaint because of, in part, his "inconsistent" allegations regarding exhaustion of administrative remedies, and his failure to allege special circumstances justifying Plaintiff's failure to exhaust his administrative remedies].)

remedies. If he chooses to plead facts regarding exhaustion, however, his Complaint may be dismissed for failure to state a claim if "the allegations in the complaint [taken as true] suffice to establish that [the prisoner failed to exhaust his administrative remedies]." *Id*.

Here, the allegations in Plaintiff's Complaint, taken as true, simply do not suffice to establish that he failed to exhaust his administrative remedies. Defendants are certainly correct that, in Plaintiff's Complaint, in response to the question "Is there a prisoner grievance procedure at this facility," Plaintiff answered "Yes." (Dkt. No. 1, ¶ 4[a] [Plf.'s Compl.].) However, in response to the question "If your answer to 4(a) is YES, did you present the facts relating to your complaint in this grievance program," Plaintiff answered "Yes." (*Id*. at ¶ 4[b].) In response to the next question "What steps did you take?" Plaintiff answered, "I filed a grievance at Coxsackie [Correctional] [F]acility." (*Id*. at ¶ 4[b][i].) In response to the next question "What was the **final** result of your grievance?" Plaintiff answered, "None. They failed to [r]espond." (*Id*. at ¶ 4[b][ii] [emphasis in original; internal quotation marks omitted].)[121] In response to a later question, "If there is no grievance procedure in your institution, did you complain to prison authorities about the facts alleged in your complaint?" Plaintiff answered, "Yes." (*Id*. at ¶ 4[c].) In response to the next question, "What steps did you take?" Plaintiff answered, "I filed complaints to . . . Deputy Superintendent . . . of Security [Graham]." (*Id*. at ¶ 4[c][i].) Finally, in response to the next question, "What was the **final** result regarding your complaint?" Plaintiff answered, "No results." (*Id*. at ¶ 4[c][ii] [emphasis in original].)

It is true that Plaintiff has not alleged facts plausibly suggesting that he filed an appeal (or

---

[121] I note that Plaintiff attached to his Complaint a copy of this grievance. (Dkt. No. 1, Part 1, ¶ 4 & Attachment Thereto [Plf.'s Compl.].)

complaint) with the Coxsackie C.F. Superintendent, complaining of a failure by the IGRC to timely respond to the grievance. Nor has he alleged facts plausibly suggesting that he filed an appeal (or complaint) with CORC, complaining of a failure by Deputy Superintendent of Security Graham to timely respond to his informal complaint. However, he has no duty to do so because, as explained above, a prisoner has no duty to plead facts plausibly suggesting that he exhausted his administrative remedies. Moreover, he has pled facts plausibly suggesting that "special circumstances" might have existed justifying his failure to comply with the administrative procedural requirements, namely, (1) his previously mentioned informal efforts to file complaints with Deputy Superintendent of Security Graham coupled with (2) his confused understanding that the PLRA did not require him to further pursue his remedies through the prison grievance program. (Dkt. No. 1, ¶ 4[b] [Plf.'s Compl., answering "Because of the Prison Litigation Reform Act" in response to question "Why did you choose to not present the facts relating to your complaint in the prison's grievance program?"].)

As a result, I recommend that the Court reject Defendants' exhaustion argument to the extant that argument is premised on Rule 12(b)(6) grounds. However, I reach a different conclusion with regard to Defendants' exhaustion argument to the extent that argument is premised on Rule 56 grounds.

**2. Rule 56 Analysis**

Simply stated, the record contains insufficient evidence to create a triable issue of fact regarding each of the inquiries contained in the above-described three-part inquiry established by the Second Circuit for exhaustion cases.

With regard to the first inquiry (regarding whether the administrative remedies not

pursued by Plaintiff were in fact "available" to Plaintiff), Plaintiff essentially alleges that his administrative remedies were not "available" to him because (1) on October 2, 2004, he filed a grievance to which the Coxsackie C.F. Inmate Grievance Review Committee provided no response, and (2) he then filed multiple complaints with Coxsackie C.F. Deputy Superintendent of Security Graham, who provided no response to those complaints. (Dkt. No. 1, ¶ 4 & Attachment Thereto [Plf.'s Compl.].) The problem is that, pursuant to DOCS well-established three-step Inmate Grievance Program, an inmate in a New York State correctional facility has an administrative remedy even when the correctional facility has failed to file, or respond to, a grievance that has been submitted by the inmate; specifically, here, Plaintiff could have filed with CORC an appeal complaining of the aforementioned failures, and had to do so to complete the grievance process.[122] Moreover, Plaintiff has effectively admitted that he never did so.[123]

Although the Court has no duty to independently scour the record for evidence that Plaintiff filed any appeal to CORC,[124] I note that Plaintiff has, in response to Defendants' motion,

---

[122] As explained above in this Report-Recommendation, any failure by a facility's IGRC or superintendent to timely respond to a grievance or first-level appeal, respectively, can be appealed to the next level, including CORC, to complete the grievance process. *See supra*, note 114 of this Report-Recommendation (citing authorities).

[123] (*Compare* Dkt. No. 28, Part 2, ¶ 6 [Defs.' Rule 7.1 Statement, asserting that Plaintiff never filed appeal with CORC and providing accurate record citation supporting that factual assertion] *with* Dkt. No. 34, at 2, ¶ 6 [Plf.'s Rule 7.1 Response, not specifically controverting the referenced factual assertion, nor providing any record citation in support of any factual assertion, nor even addressing Defendants' referenced factual assertion in a matching numbered paragraph, as required by Local Rule 7.1(a)(3) of the Local Rules of Practice for this Court]; *see also* Dkt. No. 34, at 2, ¶¶ 7-9 [Plf.'s Rule 7.1 Response, asserting several facts regarding the alleged exhaustion of his administrative remedies in general, but asserting no facts regarding whether he filed any appeal with CORC, and, in any event, providing no record citations in support of any factual assertions].)

[124] *See*, *supra*, note 24 of this Report-Recommendation.

adduced a sworn assertion that, at some point in time, he sent one or more "follow-up letters" to "Director Eagen" at "Albany's (IGRC) Central Office," and that Director Eagen never responded to that letter or those letters.[125] Setting aside the totally uncorroborated nature of this new assertion by Plaintiff, such an assertion would not create a genuine issue of material fact with respect to whether Plaintiff completed the exhaustion process since (1) Plaintiff has not provided any evidence that the referenced "follow-up letters" constituted *appeals* from decisions by relevant officials at Coxsackie C.F. regarding one or more of his grievances, nor has he even identified the subject matter (or dates) of the referenced "follow-up letters," and (2) in any event, the record contains no evidence that Plaintiff satisfied a prerequisite to an appeal to CORC regarding the decision (or lack of response) from the IGRC, namely, an appeal from the IGRC's decision (or lack of response) to the Coxsackie C.F. *Superintendent*.

With regard to the second inquiry (regarding whether some or all of the Defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it, and whether Defendants' own actions inhibiting Plaintiff's exhaustion of remedies may estop one or more of the Defendants from raising Plaintiff's failure to exhaust as a defense), Defendants have not forfeited the affirmative defense of non-exhaustion because they did indeed raise it in their Answer. (Dkt. No. 12, Part 1, ¶ 13 [Defs.' Answer].) Moreover, I can find no record evidence that any Defendants are estopped from raising Plaintiff's exhaustion as a defense by taking actions that inhibited Plaintiff's exhaustion of administrative remedies. Indeed, rather than alleging that *Defendants* inhibited Plaintiff's exhaustion of administrative remedies, Plaintiff's Complaint alleges that Plaintiff was inhibited (through non-responsiveness) by (1) unnamed

---

[125] (Dkt. No. 34, at 17, ¶ 7 [Plf.'s Decl. in Opp. to Defs.' Motion].)

officials at Coxsackie C.F.'s Inmate Grievance Program (or perhaps the Grievance Review Committee),[126] and Coxsackie C.F. Deputy Superintendent of Security Graham.[127] His opposition papers similarly fail to contain any evidence placing blame on Defendants for the (alleged) failure to address his grievances and complaint letters.[128]

Finally, with regard to the third inquiry (regarding whether evidence of "special circumstances" justifying Plaintiff's failure to exhaust has been adduced sufficient to create an issue of fact to survive a motion for summary judgment), I find no such evidence in the record. Granted, there are some pieces of record evidence indicating two efforts by Plaintiff to informally complain about various of the issues raised in his Complaint in this action.[129] However, because Plaintiff chose to raise those concerns by letter to Deputy Superintendent of Security Graham rather than by a grievance to the Coxsackie C.F. IGRC, Coxsackie C.F Superintendent, and CORC pursuant to DOCS' well-established exhaustion procedure, his letters were interpreted as

---

[126] (Dkt. No. 1, Part 1, ¶ 4[b] & Attachment Thereto [Plf.'s Compl.].)

[127] (*Id*. at ¶ 4[c].)

[128] (*See*, *e.g.*, Dkt. No. 34, at 16-17, ¶¶ 5-8 [Plf.'s Decl. in Opp. to Defs.' Motion].)

[129] (Dkt. No. 35, Part 3, at 5-9 [Ex. B to Schwartz Affirm., attaching copy of Plaintiff's letter of 9/28/04 to Coxsackie C.F. Deputy Superintendent Graham, alleging misconduct by Defendant McIntyre]; Dkt. No. 35, Part 3, at 2 [Ex. B to Schwartz Affirm., attaching copy of Coxsackie C.F. Memorandum dated 10/12/04 from Coxsackie C.F. Superintendent Filion to Plaintiff responding to Plaintiff's letter of 9/28/04 to Coxsackie C.F. Deputy Superintendent Graham, interpreting Plaintiff's letter as alleging "staff harassment"]; Dkt. No. 35, Part 4, at 13-18 [Ex. C to Schwartz Affirm., attaching copy of Plaintiff's letter of 10/3/04 to Coxsackie C.F. Captain A.W. Dirie, alleging misconduct by Defendants McIntyre, Hoessle and Frazier]; Dkt. No. 35, Part 3, at 2 [Ex. C to Schwartz Affirm., attaching copy of Coxsackie C.F. Memorandum dated 11/4/04 from Coxsackie C.F. Captain A.W. Dirie to Plaintiff responding to Plaintiff's letter of 10/3/04 to Coxsackie C.F. Deputy Superintendent Graham, again interpreting Plaintiff's letter as alleging "staff harassment"].)

alleging "staff harassment,"[130] and they never reached Coxackie C.F. Superintendent Gary H. Filion.[131] Furthermore, Plaintiff never explains the source of his confused understanding, expressed in his Complaint, that the PLRA did not require him to further pursue his remedies through the prison grievance program.[132] Based on the record before me, I have no choice but to conclude that his confusion was not reasonable. For these reasons, I find that Plaintiff's efforts (to complain about various of the issues raised in his Complaint in this action) are not evidence of "special circumstances" justifying his failure to exhaust, but evidence merely of his decision to unnecessarily circumvent DOCS' well-established exhaustion procedure, which was available at Coxsackie C.F.

As a result, I recommend that, should the Court decline to dismiss Plaintiff's First Amendment claims on Rule 12(b)(6) grounds, the Court dismiss that claim, in the alternative, on Rule 56 grounds for failure to adduce record evidence that he exhausted his available administrative remedies before filing suit in federal court.

### C. Whether Plaintiff's Complaint Should Be Dismissed Because of His Failure to Promptly Notify the Court and Opposing Counsel of His Change of Address

Because I have already found that multiple independent grounds exist upon which to base a recommendation that the Court dismiss Plaintiff's Complaint, I need not, and do not, address the merits of this alternative argument, other than to note that, although it is true that, on

---

130 (*Id.*)

131 (*Id.*)

132 (Dkt. No. 1, ¶ 4[b] [Plf.'s Compl., answering "Because of the Prison Litigation Reform Act" in response to question "Why did you choose to not present the facts relating to your complaint in the prison's grievance program?"].)

September 6, 2006, District Judge McAvoy stated that "**[a]ny future failures to keep Defendants and the Court apprised of address changes will result in the dismissal of this action**," (Dkt. No. 26, at 2 [emphasis in original]), Plaintiff has provided a plausible explanation for his referenced failure (Dkt. No. 34, at 7 [Plf.'s Opp. Mem. of Law]), and Defendants do not appear to have experienced any prejudice as a result of that failure.

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 28) be **GRANTED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 [2d Cir. 1989]); 28 U.S.C. § 636(b); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: September 28, 2007
Syracuse, New York

George H. Lowe
United States Magistrate Judge